THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* THE ORANGE COUNTY ROAD CONSTRUCTION Co., Defendant.

(County Court, Orange County, February, 1902.)

Penal Code, § 384h, subd. 1, relative to hours of labor, unconstitutional.

The Penal Code, § 384h, subd. 1, declaring that any person or corporation is guilty of a misdemeanor " Who, contracting with the state or a municipal corporation, shall require more than eight hours' work for a day's labor," is unconstitutional.

The statute unlawfully deprives such contractors of all opportunity to secure labor upon terms advantageous to themselves and requires them to accept only such labor as may be willing to work on the terms prescribed by the statute.

INDICTMENT found by the grand jury at the November, 1901, Term of the Supreme Court, held in and for the county of Orange. Transferred to the County Court of Orange county. Indictment charged violation of subdivision 1, section 384h of the Penal Code, in that the defendant required one James Toohey to work more than eight hours for a day's labor, viz., ten hours per day.

It appears from the indictment that the defendant had made a contract with the board of supervisors of Orange county for the building of a road in the town of New Windsor, upon which the work in question was performed.

At the February, 1902, Term of the County Court, the defendant interposed a demurrer upon the ground that the facts stated in the indictment do not constitute a crime, for the reason that the said section of the Code is unconstitutional and void.

Albert H. F. Seeger, Assistant District Attorney, for People.

William Vanamee, for defendant.

BEATTIE, J.    The defendant has secured from the State and from the board of supervisors of Orange county, a contract to improve or construct certain highways in this county.

The validity of the act under which the indictment was found has been challenged by the defendant, and it becomes necessary to consider its purposes and its validity.

The indictment charges the defendant with the violation of subdivision 1 of section 384h, of the Penal Code, in having required from laborers upon a public work within this State and county, more than eight hours' work in each day.    The provisions of this section went into effect on June 2, 1897, and the act was passed to make penal the violation of any law under which any person or corporation, " Who, contracting with the state or a municipal corporation shall require more than eight hours' work for a day's labor "; the Court of Appeals, in the case of People ex rel. Warren v. Beck, 144 N. Y. 225, having decided in 1894 that the violation of an act which provided:  " Nor shall any man or set ᵒof men be employed for more than eight hours in twenty-four consecutive hours except in case of necessity," did not constitute a crime.

The basis, therefore, of the legislation in question, is an attempt to make or create a criminal offense out of a violation of the statute known as the Labor Law, being chapter 415 of the Laws of 1897, and thus make effective (through the penalties prescribed by the Penal Code) the provision of that law which prescribes, that " eight hours shall constitute a legal day's labor * * * upon work, by, or for the State or a municipal corporation, or by contractors or sub-contractors therewith."    In considering the character and validity of such legislation, which undertakes to make criminal acts wholly innocent, except by reason of the prohibition, it is all-important to weight well the utterance of one of the greatest writers upon the origin and nature of laws, " Liberty is in perfection when criminal law derives each punishment from the particular nature of the crime. There are then no arbitrary decisions; the punishment does not

flow from the capriciousness of the legislator, but from the very nature of the thing; and man uses no violence to man."

The obvious purpose of the Labor Law was to narrow as far as possible the field from which a supply of laborers could be obtained, by prohibiting directly the employment of aliens, and indirectly the employment of nonresidents, and having done this, to destroy, to the extent that the extra time represented actual value and labor, the benefit to be derived by contractors from work which might have been accomplished in ten hours as distinguished from work · done by the same laborers within eight hours. The whole effect of the legislation was to compel payment for time during which no labor was to be performed. The law fixed the length of the day, not with reference to the ability of a person to labor or with relation to the hours during which labor could not be properly or advantageously done.

It did not undertake to strike at early hours or late hours, but arbitrarily fixed the length of the day, so that for a day's pay the employer should receive just so much less labor. If it is permissible to impose such burdens upon the employer by fixing the length of a day at eight hours, there is nothing to prevent a lessening of the time so that, at the dictation of some interest, a half-day's labor should be counted as a full day's work.

If labor has a right to require a limitation upon the time during which work shall be done, it has an equal right to require a limitation upon the character and extent of the work to be done. As has been said, the object of the limitation is to secure compensation for a day's work where the length of time employed will permit the performance of only a portion of the work which might be completed in two or more hours of additional time. The same result might be obtained by forbidding the performance of more than a specified amount of work in a day, and with equal legality.

A law which forbade the laying of more than a specified number of brick, or the excavation of more than a specified quantity of earth in a day would wholly ignore the differing abilities of laborers and impair, if not destroy, the element of personal energy and effort involved in all human employments, but it would no more interfere with the rights of the individual than the law in question.

It would be entirely legal for laborers to combine so that they

might exact in all employments, a day of eight hours work, to be paid for at a fixed standard of wages, but their failure to make such a combination does not justify legislation aimed to secure the same result as against those who are unwilling to enter such a combination, and who desire to retain their own freedom of action.

If, however, such legislation in the interest of the employee could be sustained as a valid exercise of legislative authority, it cannot be denied that legislation in the interest of the employer which fixed arbitrarily any number of hours' labor as a day's work, and required the employee to accept fixed and inadequate wages therefor, would be equally within the control of the Legislature. A condition not unknown in the history of labor, where punishment as for a crime was visited upon those who refused to work under the standard fixed by law.

It is apparent, therefore, that in undertaking to thus legislate for the purpose of aiding a particular class or interest, the whole subject finally results in a struggle as to which interest, the employer or the employed, can control the course of legislation. If such legislation was based upon some inherent right of the individuals concerned and not upon conditions as old as civilization, the law of supply and demand, something might be said in its favor.

The suggestions made in some jurisdictions that because the State has always fixed by law the salaries and wages of its officers, the employment of all labor stands upon the same footing, does not answer any argument against the legislation, the validity of which is disputed in this case, because such employments are wholly distinct and differ in every characteristic from the employment of labor in the ordinary course of business. The officers and employees of the State and municipalities form a comparatively small and restricted class, their services are not secured upon any competition as to the rate of wages, or the hours of labor, and they are employed, not as laborers by the day, but by the month or year, and whatever may be the character or terms of their employment, they are the direct and immediate employees of the State.

Such conditions are not those aimed at by the statute in question. By its very terms it undertakes to control and regulate the action of all persons temporarily in the employment of the

State, in such manner as to prohibit, not the State, but such employees, acting as independent contractors and with interests adverse to the State, from securing *their* employees upon such terms and conditions as the supply of laborers will permit.    It takes from such contractors all opportunity to exercise their own judgment, business resources and ability for securing labor upon terms advantageous to themselves, and requires them to accept only such laborers as may be willing to work upon the terms and conditions prescribed by the statute.

The question considered here was not directly involved in the recent case of People ex rel. Rodgers v. Coler, 166 N. Y. 1, but the prevailing opinion of the court deals so comprehensively with the subject of " labor legislation " and is so decidedly adverse to its validity, that I feel bound upon principle and authority to decide, that the law under which the defendant was indicted is unconstitutional and void.

The demurrer must be allowed, and final judgment entered thereon in favor of the defendant.

Demurrer allowed, and final judgment entered thereon in favor of defendant.