[No. 5915.]

KEEFE ET AL. v. THE PEOPLE.

1. **Constitutional Law—Master and Servant—Police Power— Restricting Hours of Labor.**

   Sections 2801a-b-c of 3 Mills' (Rev.) Stats., making it a criminal offense for any officer or agent of the state or county, township, school district, municipality or incorporated town, or any contractor or sub-contractor thereof, to employ any mechanic, workingman or laborer in the prosecution of any public work for more than eight hours a day, and providing a penalty for the violation thereof, cannot be upheld as the exercise of the sovereign police power.—P. 321.

2. **Constitutional Law—Master and Servant—Restriction of Hours of Laborer.**

   Section 2801a-b-c of 3 Mills' (Rev.) Stats., restricting the hours of labor in all work undertaken in behalf of the state, or any county, township, school district, municipality or incorporated town, is a valid exercise of the state's proprietary power to properly prescribe for itself and its auxiliary arms of government the terms and conditions upon which work of a public character may be done.—P. 322.

3. Cities and Towns—City and County of Denver—Special Charter—Relation to the State.

Although the city of Denver was created by constitutional amendment, by a direct vote of the people, and was given the power to frame its own charter, it is just as much an agency of the state for the purpose of government as if it were organized under a general law passed by the general assembly. The mode of its creation does not change the nature of its relation to the state, and like cities and towns organized under the general statutes it is still a part of the state government, and is as much amenable to state control in all matters of a public, as distinguished from matters of a local, character, as are other municipalities; and the state still has the supreme power to enact general laws declaring what shall be its public policy, and it can make them applicable to the city of Denver, as well as to all other cities of the state.—P. 324.

4. Cities and Towns—City and County of Denver—Constitutional Law—Delegation of Powers of State.

The state cannot relinquish nor surrender to a municipality the power to enact laws to punish crimes and misdemeanors, and the operation of such laws embraces all of the people of the state, whether living in municipalities or counties created directly by the constitution, or organized under general laws. —P. 325.

*Error to the District Court of the City and County of Denver.*

*Hon. Samuel L. Carpenter, Judge.*

John A. Keefe, John Gaffy and William Denney were convicted of employing laborers on public improvements in the City of Denver for a longer period than eight hours a day, and they bring error.

Decision *en banc.*                    *Affirmed.*

Mr. F. A. WILLIAMS and Mr. G. Q. RICHMOND, for plaintiffs in error.

Mr. N. C. MILLER, attorney general, Mr. W. R. RAMSEY, assistant attorney general, Mr. JOHN H. MURPHY and Mr. W. F. HYNES, for the people.

CHIEF JUSTICE GABBERT delivered the opinion of the court:

The defendant was convicted under an information based upon the following statute:

"In all work hereafter undertaken in behalf of the state or any county, township, school district, municipality or incorporated town, it shall be unlawful for any board, officer, agent, or any contractor or sub-contractor thereof to employ any mechanic, workingman or laborer in the prosecution of any such work for more than eight hours a day."

The second section of the act permits work in excess of eight hours a day in emergency cases, provided that hours in excess of eight a day shall be treated as constituting a part of a subsequent day's work, and that in no one week of seven days shall there be permitted more than forty-eight hours of labor.

The third section declares a violation of the foregoing provision a misdemeanor, and the penalty imposed thereby is a fine or imprisonment, or both, in the discretion of the court.—3 Mills' (Rev.) Stats., § 2801a, b, c. The case was tried upon a stipulation of facts, from which it appears that the defendants were contractors with the City and County of Denver, by which they undertook, and were engaged in the construction of, a sanitary sewer belonging to the city, and employed Ernest Koenneker to do work on it for more than eight hours in each calendar day—viz., for a period of nine hours a day—and paid him the regular scale of wages; that Koenneker voluntarily entered upon his work, and there was no extraordinary emergency or necessity for his working more than eight hours a day for the protection of property or human life. It was also stipulated that the labor performed by Koenneker

was healthy, outdoor work, not dangerous or in any way injurious to life, limb, or health, and could be performed for a period of nine hours during each working day of the week without injury or harm to him; that such work was in no way more dangerous to health or hazardous to life or limb or the general welfare of Koenneker or any other person engaged therein than the labor performed by persons doing the same kind and character of work, as the employees or contractors having contracts to do the same kind of work for private persons or private corporations. It was upon this state of facts that defendants were adjudged guilty and fined. From that judgment they bring the case here for review on error.

Counsel are agreed that this statute does not fall within the police power of the state. The attorney general concedes that it cannot be sustained as a valid exercise of such power, since it is inhibited by the decision of this court in *In re Morgan*, 26 Colo. 415, and, as that proposition is within the ban of practically all decisions of federal and state courts in similar cases. If it can be upheld at all, the attorney general says, it must be solely upon the principle that the state may prescribe for itself and its subordinate political subdivisions the conditions upon which all public work shall be performed; and as counties, townships, school districts and municipalities are but mere political subdivisions of the state government, its auxiliary organizations, or agencies, for the purpose of local government, the state, as the principal, may impose upon these agencies precisely the same conditions with respect to the doing of their public work that it can prescribe for itself.

We agree with counsel that this statute, if valid, is so upon the ground that the state, in its proprie-

tary capacity, may properly prescribe for itself and its auxiliary arms of government the terms and conditions on which work of a public nature may be done. It cannot be upheld as an exercise of the sovereign police power, as has been decided by the supreme court of the United States and every state court of last resort that has had occasion to consider the question. The latest decision of the supreme court of the United States on that question is *Lochner v. N. Y.,* 198 U. S. 45, in which many of the cases are reviewed, and the distinction between a case like this and the one under consideration was pointed out. Whether the statute can be upheld on the ground relied upon by the attorney general, the authorities are not in accord. Probably the leading case against such legislation is *Cleveland v. Clements Construction Co.,* reported in 59 L. R. A. 775. Other cases cited by defendants to the same proposition are: *Ex parte Kubach,* 24 Pac. 737; *Seattle v. Smyth,* 60 Pac. 1120; *People v. Orange Co.,* 75 N. Y. Supp. 510; 67 N. E. 129; *People ex rel. Rogers v. Coler,* 66 N. Y. 1.

*Ex parte Kubach* was referred to by this court in *In re Morgan, supra,* not with the intention of approving its doctrine, but as an illustration of the extent to which some courts go in denying the right of the legislature to pass laws of this character The case was cited because it went much further than we did in the case then under consideration, and in that sense was authority for the conclusion there reached. In the Kubach case, however, the court merely held the ordinance void in so far as it attempted to create a criminal offense.

These authorities are based upon the proposition that, with respect to the carrying on of works of improvement by municipal corporations, they are as free from legislative restraint by statutes of this

character as are private corporations in carrying out the objects of their incorporation; and, since private corporations may not thus be controlled, it follows that municipal corporations can not be; that a municipal corporation, in exercising that branch of its powers which may properly be designated as "private," concerning its purely private rights, are, like private corporations, free from such control of the legislative department of government.

On the other side, the leading case, and the one on which the attorney general mainly relies, is *Atkin v. Kansas*, 191 U. S. 218, which is also reported in 64 Kan. 174. Other cases which he cites in support of his main contention are: *People v. Beck*, 30 N. Y. Supp. 473; *In re Dalton*, 61 Kan. 257; *People v. Warren*, 84 N. Y. Sup. Ct. Reps. 120.

The case is one of first impression in this state. Defendants are mistaken in their supposition that *In re Morgan, supra,* is conclusive in their favor. The principle underlying the statute there construed is entirely different from that upon which the act under consideration rests. In the conflict of authority on the subject, the supreme court of the United States having decided the precise question in upholding the Kansas law in the Atkin case, *supra,* we shall conform to our usual custom by following the lead of that august tribunal in determining the case at bar.

Mr. Justice Harlan, in the course of his opinion in that case, so concisely and lucidly states the principle upon which legislation of this character is upheld that, without further comment, we cite the following excerpts, as constituting the reasons for sustaining our act:

"These questions—indeed, the entire argument of defendant's counsel—seem to attach too little consequence to the relation existing between a state

and its municipal corporations.  Such corporations are the creatures—mere political subdivisions—of the state, for the purpose of exercising a part of its powers.  They may exert only such powers as are expressly granted to them, or such as may be necessarily implied from those granted.  What they lawfully do of a public character is done under the sanction of the state.  They are, in every essential sense, only auxiliaries of the state for the purposes of local government."

"It cannot be deemed a part of the liberty of any contractor that *he* be allowed to do public work in any mode he may choose to adopt, without regard to the wishes of the state.  On the contrary, it belongs to the state, as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf or on behalf of its municipalities.  No court has authority to review its action in that respect.  Regulations on this subject suggest only considerations of public policy; and with such considerations the courts have no concern."

. "If it be contended to be the right of every one to dispose of his labor upon such terms as he deems best—as undoubtedly it is—and that, to make it a criminal offense for a contractor for public work to permit or require his employee to perform labor upon that work in excess of eight hours each day, is in derogation of the liberty both of employees and employer, it is sufficient to answer that no employee is entitled, of absolute right and as a part of his liberty, to perform labor for the state; and no contractor for public work can excuse a violation of his agreement with the state by doing that which the statute under which he proceeds distinctly and lawfully forbids him to do."

And, in referring to the fact which was stipulated by the parties in that case, as here, that the work performed by the employee of defendants was not dangerous to life, limb or health, and labor for more than ten hours was not injurious to him in any way, the court said that such considerations were not controlling, because the decision was based upon the broad ground that the work being of a public character, absolutely under the control of the state and its municipal agents acting by its authority, it is for the state to prescribe the conditions under which it will permit work of that kind to be done, and the legislation in question did not infringe upon the personal rights of others.

But, defendants say, if such be the rule that is applicable to municipalities in this state organized under our general laws, it is not pertinent to the city and county of Denver, which was created by article 20 of the constitution. The present city and county of Denver was created by this constitutional amendment as the result of the direct vote of the people of the entire state. Territorially, it is composed of the former city of Denver, a portion of the former county of Arapahoe, and of several independent municipalities therein. In *People v. Sours*, 31 Colo. 387 (speaking of this amendment), it was said:

"The amendment is to be considered as a whole, in view of its express purpose of securing to the people of Denver absolute freedom from legislative interference in matters of local concern."

Subsequent decisions of this court have confirmed that declaration. But the municipality of Denver, though created by a constitutional amendment by a direct vote of the people, and having the power to frame its own charter, is just as much an agency of the state for the purpose of government as if it was organized under a general law passed by the general assembly. The mode of its creation does

not change the nature of its relation to the state. Like cities and towns organized under the general statutes, it is still a part of the state government. It is as much amenable to state control in all matters of a public, as distinguished from matters of a local, character, as are other municipalities. The state still has the supreme power to enact general laws declaring what shall be its public policy, and it can make them applicable to the city of Denver, as well as to all other cities of the state. This act, in effect, declares that it is the public policy of the state not to permit any officer or agent of the state, or its municipalities, or any contractor thereof, to employ any working man in the prosecution of public work for more than eight hours a day, and for a violation of the statute a penalty is provided. What the public policy of the state is, rests with its legislative department. The work of building a sanitary sewer by a city, in a sense, is local, in that it affects, primarily, its own citizens; but it is directly connected with the public health, and is a matter of concern and great importance to the people of the entire state. The state has never relinquished to the new city and county of Denver, and never can surrender to it, the power to enact laws to punish crimes and misdemeanors, and the operation of such laws embraces all of the people of the state, whether living in municipalities or counties created directly by the constitution, or organized under general laws. Such legislation would not be valid if it expressly exempted the city and county of Denver from its operation.

Some other questions have been discussed by counsel, but we do not consider that their decision would be of any importance, or in any wise affect the proper judgment to be pronounced in this case.

The judgment of the district court is affirmed.

Decision *en banc*.                    *Affirmed.*