[No. 7692.]

HILTS, ET ALS. v. MARKEY, ET AL.

CONSTITUTIONAL LAW—Art. XX—There are within the municipality of the city and county of Denver, two governmental entities, a county, with all the duties of a county as prescribed by the general law, and a city, with duties wholly of local character. All the duties of these governmental entities are imposed by the constitution upon a single set of municipal officers. Their duties, so far as they concern county government, are fixed by the constitution and general laws, and as to these, the people of the municipality have no power to legislate—(387, 388).

The provision of sec. 4 of art. XX, that the city council shall have power to fix the rate of taxation in each year, confers no power to limit the rate of taxation for county purposes—(388).

The board of supervisors of the city and county of Denver, in levying taxes for county purposes, perform the same office as the board of county commissioners in other counties. They have authority, and are under an absolute duty to determine the amount to be levied. And this authority is not limited by the provision of sec. 4 of art. XX—(386).

The levy of 3 mills upon a dollar, for county purposes, approved, although the rate fixed by the charter had already been levied—(386, 387).

The provision of sec. 212 of the charter adopted by the people of Denver, under authority of art. XX of the constitution, construed to apply only to taxes levied for municipal purposes, and of no effect upon the power and duty of the board of supervisors, in fixing the rate of taxation for state and county purposes—(388).

Error to Denver District Court.—HON. JAMES H. TELLER, Judge.

Mr. H. A. LINDSLEY, Mr. THOS. R. WOODROW, for plaintiffs in error.

Mr. CARLE WHITEHEAD, Mr. ALBERT L. VOGL, for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The action is by citizens, residents and taxpayers of the city and county of Denver, to enjoin the extension of a three-mill tax levy for the year 1911, exclusively for county purposes, assessed on property in the consolidated territory, by the board of supervisors of the municipality, discharging in that capacity, as is claimed, the duties of county commissioners, under section 156 of the charter, because such levy was made without authority, and because it is in excess of fifteen mills, which is the limit of the tax levy allowed under section 212 of the charter for city and county purposes, and therefore illegal and void. The plaintiffs upon demurrer to the complaint, which was overruled, had judgment, the defendants having declined to plead further, and the court, finding the levy void, permanently restrained the defendants from further proceeding to extend the same. To review this judgment and decree the case is brought here on error. Upon application in this court a supersedeas issued, staying the judgment and meanwhile the levy has been extended on the tax roll, so that no question concerning that matter is now here for consideration. The thing left to be determined, which after all is the gist of the controversy, is whether the three-mill levy itself is valid. If it is, then clearly the demurrer to the complaint should have been sustained.

It was said in *People v. Sours,* 31 Colo. 369, at page 387, that,

"The respondent's construction, however, is not that placed upon the amendment by the counsel for the petitioners, or, we assume, by the people. The provision that 'Every charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable,' completely contradicts the as-

sumption that the amendment regards such duties as being subject to local regulation and control. The amendment is to be considered as a whole, in view of its expressed purpose of securing to the people of Denver absolute freedom from legislative interference in matters of local concern; and, so considered and interpreted, we find nothing in it subversive of the state government, or repugnant to the constitution of the United States."

It was this original construction of the purpose and intent of article XX, to the effect that the people of the city and county of Denver had power to legislate upon and regulate matters of local concern only, that made it possible for the court to uphold and validate it, and this construction has ever since been rigidly and vigilantly upheld and maintained.

In *People v. Cassiday,* 50 Colo. 503, at page 508, commenting on section 2 of article XX, which reads as follows:·

"The officers of the city and county of Denver shall be such as by appointment or election may be provided for by the charter; and the jurisdiction, term of office, duties and qualifications of all such officers shall be such as in the charter may be provided; but every charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable," the following was declared:

"This section does not imply that there is no county or county government within that territory; there is therein a county and a county government, just as both exist in other portions of the state. Section 2 not only does not, in fact, set aside governmental duties and functions as to state and county affairs in this territory, it

does not even pretend to do so, and by no stretch of the imagination can it fairly be held to do so. Neither is there any other provision of article XX which does it. The duties are fixed, absolutely fixed, until changed by the same power which created them. Section 2 expressly recognizes that such duties are in existence and must be discharged, and forthwith proceeds to provide and declare by whom they shall be performed."

And further on in that opinion, at page 514, the court says:

"As matters now stand, there is nothing whatever in article XX which gives to the people of the city and county of Denver power to legislate upon anything whatever, concerning matters solely of state and county governmental import, except merely the designation of certain agents to perform therein the acts and duties incident thereto."

These excerpts from our own decisions serve to conclusively show that the people of the city and county of Denver have no power whatever to legislate in the slightest degree upon any matter solely affecting state and county affairs. Such has been the construction given article XX, and none other was possible if the article was to stand. So that, if by the charter of the city and county of Denver it is undertaken to legislate upon, or in any way control and fix, the method of making, or the amount of the levy, by way of limitation or otherwise, within the consolidated territory, for county purposes, such attempt is futile, because that is a matter solely under state control, and may not be interfered with in any way by local legislation. It will not, however, be assumed that the people, through their charter, have undertaken to do something clearly beyond the authority and power granted, and especially since the early interpretation given

to article XX in the so-called *Sours* case, strictly limiting their power of legislation to matters of local concern, from which we have just quoted, had been announced before the present charter was framed or adopted; but that instrument should be given, wherever its provisions will permit, a construction in harmony with the clear meaning and effect of article XX, and as well with the judicial interpretation already placed upon it by this court.

In compliance with the command of section 2 of article XX of the constitution, that "Every charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable," the charter of the city and county of Denver provides:

"Except as otherwise herein provided, the officers who shall respectively perform the acts and duties required of county officers to be done by the constitution and the general laws, in all cases not specifically provided for, so far as applicable, shall be as follows: * * * the board of supervisors shall act as a board of equalization and perform the acts and duties required of a board of county commissioners, when sitting as a board of equalization."

The duty of levying a county tax not being otherwise provided for in the charter of the city and county of Denver, the board of supervisors not only had authority, but it became its absolute duty to determine the amount of such tax under the foregoing section. The board did not act as county commissioners; they acted as a board of supervisors, discharging the duties of county commissioners. As a board of supervisors, holding a municipal office, the duty devolved upon it to levy a county tax un-

def the general law, just as boards of county commission-ers do the like in other counties of the state, and in this instance such levy was unquestionably legally made by the supervisors.

Within the consolidated municipality of "The City and County of Denver" there are two governmental en-tities, a county with county duties, as provided by the general state law, and the consolidated municipality of the city and county of Denver, with duties wholly of a local character; all of the duties of both these govern-mental entities are to be done by a single set of municipal officers, certain of whom are designated by the charter to discharge duties and functions other than those of a muni-cipal character; but still to be performed in that territory; the duties of state and county governmental import being fixed by the constitution and general laws, concerning which the people of "The City and County of Denver" have no power to legislate, and those pertaining to the municipal government of "The City and County of Den-ver" being fixed by the charter. The word "county," as used in the designation "The City and County of Den-ver," has no significance so far as county duties, as such, and the discharge of them, be concerned; it is merely a part of a name, used to identify the consolidated munici-pality known as "The City and County of Denver." With equal propriety, and doubtless with much less confusion, that entity might have been designated "The Municipal-ity of Denver" or "The Corporation of Denver." The designation "The City and County of Denver" means exactly the same as would the names "The Municipality of Denver" or "The Corporation of Denver." Such a designation could and would refer, in the very nature of things, to the municipality as a city, that is, to local affairs and local government, and there could then have

been no doubt or confusion about its meaning. Keeping in mind, therefore, the interpretation given to article XX by this court and that the designation "The City and County of Denver" has and can only have reference to the municipality of Denver as a city, section 212 of the charter must be held to impose a limit merely upon city taxes; it can have no other meaning, because the people of Denver, through their charter, do not now, and never have had power to, legislate upon any subject, except those of a purely local nature. They could no more legislate upon county taxation, which is exclusively subject to and under the control of the constitution, the general laws and the state legislature, than they could upon a question of state revenue, or upon the matter of defining the duties of a state officer, or upon the offense of grand larceny. These things all seem so clear to the court, in view of its former decisions, that the wonder is that such controversies find their way into court at all.

The provision of article XX which says that the council shall have power to fix the rate of taxation on property each year for city and county purposes, under the construction given this article by this court, can mean, and does mean, nothing more than that the council has power to fix the rate only for the purpose of the consolidated municipality of "The City and County of Denver," and not for county purposes, as fixed and determined by the general laws. The like is also true of any charter provision giving the council power to legislate upon this subject. Any other holding would be in conflict with the previous decisions of this court, and would utterly nullify rulings which in the first instance made it possible to uphold the amendment at all.

Other propositions are urged by counsel for the defendants in error to uphold the judgment of the court

below, but since the main issue must be decided against them upon the question of the validity of the levy itself, the court is of opinion that it is unnecessary to consider and determine matters which are only incidental to, and can in no event affect, the final outcome of the controversy, but which at best can serve only to prolong it. The thing here desirable, in the interest of the general public, is to have settled finally whether the three-mill levy in controversy is itself legal, and this we determine in the affirmative. The ruling of the court in holding the levy void was erroneous. The demurrer to the complaint should have been sustained. The cause is therefore remanded to the district court with instructions to dismiss it.                  *Reversed and remanded.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL not participating.

Mr. JUSTICE GABBERT dissenting.

———————

Mr. JUSTICE GABBERT, dissenting:

The opinion of Mr. JUSTICE BAILEY, upholding the validity of the three-mill levy, is based upon the assumption that the territory embraced within the boundaries of the city and county of Denver constitutes two entities, one a city and the other a county. This assumption is directly in the teeth of section 1, of article XX of the constitution, creating the municipality of the city and county of Denver, which, in express terms, declares, after describing the exterior boundaries, that the municipality thus created and described, shall "be a *single* body politic and corporate, by the name of the City and County of Denver." It is manifestly impossible for a single body politic to include two distinct municipal entities. The

next section of the article provides that the officers of the new municipality should be such as the charter to be adopted provided, and that such charter should designate the officers who should exercise the functions and discharge the duties of county officials required of such officials by the constitution and general laws of the state. This requirement did not recognize that there should be a county government and a city government distinct from each other, but, on the contrary, a consolidated government, with one set of officers, empowered to discharge the duties resulting from the consolidation. These officers can exercise no functions except for the single body politic, and in exercising these functions, they act for the municipality known and created by article XX as the city and county of Denver, and no other. If this is not correct, then the whole scheme of government provided by article XX does not accomplish what is claimed for it, and which, by the decisioin in the Cassidy case, it is claimed it did accomplish. In my judgment the majority opinion is directly opposed to the majority opinion of this court in that case, which Mr. JUSTICE BAILEY cites as an authority in support of his conclusion in the case at bar. The *Johnson* case, 34 Colo. 143, was based upon the ground that the municipality of the city and county of Denver included the city and also the county, each distinct from the other. The *Cassidy* case in express terms purports to overrule that case, and yet, with due deference I submit, that by the opinion in the case at bar, the *Cassidy* case is, in effect, overruled, and the doctrine announced in the Johnson case upheld. The logic of the *Cassidy* case is, that the whole effect of article XX was to empower the people of the city and county of Denver to provide by charter for local government, but that in so doing, they should designate the agencies to discharge

the duties and functions which are to be discharged by county officials elsewhere in the state, as provided by the constitution and general laws; consequently, it was held, in the *Cassidy* case, that since the adoption of article XX and the formation of the municipal corporation of the city and county of Denver, there has never been within the limits thereof a county office or county officer, as such. Logically, then, this must mean, that the officials of the city and county of Denver are officers of that municipality, and none other; and that such officials as are designated to discharge the functions of county officials prescribed by the constitution and general laws, are mere agencies of the municipality for that purpose; but that does not make them county officials, because there is no entity for which they can act in that capacity alone.

In my judgment, the limitation imposed by the charter as to the maximum tax levy is not involved. The three-mill levy was confessedly made for county purposes. There is no county. There is but one entity, the one created by article XX, which is a *single* body politic, and any levy of taxes made for the benefit of that entity must be levied for its use, and not for an entity which does not exist. In my opinion, the judgment of the district court should be affirmed.

Decided February 21, A. D. 1912. Rehearing denied April 1, A. D. 1912.