[No. 7718.]

ALBERT E. MAUFF v. THE PEOPLE.

1. CONSTITUTION LAW—*Article XX*—The purpose of article XX was to give to the people of the city and county of Denver exclusive control in matters of local concern only. Where the constitution and general laws are not set aside by express words, or necessary implication, they are as much in force in the city and county of Denver as in other portions of the state. The people of Denver have no power whatever to legislate by their charter on matters of state and county governmental import—(568).

2.——*Power to Regulate Elections*—The only special power upon the subject of elections conferred by article XX upon the people of Denver, beside the permission to use the automatic voting register, is to fix the term, which includes the time, of elections, and to designate the officers who within the municipality, as agents, perform the functions of the state and county government.

All elections are public in character, of governmental and state-wide importance, rather than of local interest, and therefore must be under the control and regulation of the constitution and general laws—(569).

The right of the elector to be safeguarded in the exercise of his franchise—a right conferred by the sovereign authority of the state—carries with it the corresponding duty, on the part of the state, to furnish all needed protection. This is of public concern; therefore, even municipal elections are within the provisions of sections 3c., 26, of the act of May 30, 1911, regulating elections—(570).

The judgment of the district court awarding mandamus to the election commission of Denver, requiring them to appoint temporary registration committees for the municipal election then approaching, from lists furnished by the chairman of the two political parties having cast the highest number of votes for governor at the last preceding general election, as required by the act of May 30, A. D. 1911 (Laws 1911, c. 127) affirmed—(563, 571).

The constitution (section 11, article VII) requires the General Assembly to pass laws to secure the purity of elections. It imposes this particular duty upon the General Assembly, and not upon any municipality; and this duty the state cannot perform if exclusive power to regulate and control municipal elections is, by article XX, vested in the people of the municipality of Denver.—WHITE, J., concurring—(572). MUSSER, J., dissented.

*Error to Denver District Court.*—Hon. Greeley W. Whitford, Judge.

Mr. W. H. Bryant, Mr. John A. Rush, Mr. John H. Gabriel, for plaintiffs in error.

Mr. John W. Sleeper, Messrs. Dayton & Denious, for defendant in error.

Christopher F. Clay, as chairman of the central committee of the Republican party of the city and county of Denver, applied in the district court for a writ of mandamus to Albert E. Mauff, Ellis Meredith and George Allan Smith, the election commission of the city and county of Denver, requiring them to appoint temporary registration committees for an approaching city election, from lists furnished by the chairman of the two political parties having cast the highest number of votes for governor at the last preceding general election, as required by the act of May 30, A. D. 1911 (Laws 1911, c. 127). A Peremptory writ was awarded accordingly.

The provisions of the constitution, the statutes, and the charter of Denver are cited in the opinions of the Judges.

Mr. Justice Bailey delivered the opinion of the court:

The suit is in mandamus by the people on the relation of the chairman of the republican city central committee of the republican party of the city and county of Denver, wherein the chairman of the democratic central committee of the democratic party of the same municipality, by proper averments, is shown to have a like interest, and entitled to the same relief to which the Republican chairman is entitled, if any, against Albert E. Mauff and others, constituting the election commission of the city and county of Denver. It is sought to compel the

commission to select, from names submitted by the re-
spective above-named chairmen, a temporary registration
committee of three for each precinct in that territory, the
members of which will become election judges at the
May, 1912, election, under the law of 1911 governing
such matters, which a majority of the commission de-
clined to do. The question is whether the commission is
subject to and shall be guided by the state statutes, re-
specting the performance of its duties regarding the con-
trol and conduct of elections. Plaintiff had judgment be-
low and the defendants bring the case here on error,
seeking a reversal thereof. Disregarding technical ob-
jections, as both parties desire and public interest re-
quires, that the controversy be disposed of promptly on
its merits, we proceed to thus consider and determine it.

If by article XX of the constitution the city and
county of Denver is freed from the constitution and gen-
eral laws of the state concerning elections, then by char-
ter the people of that political body may proceed to fix
the qualifications of electors therein, provide a complete
system for the conduct of elections, declare what shall
constitute an offense against the laws so enacted, pre-
scribe punishment therefor, say how and in what courts
election contests shall be waged, and in short, upon the
entire subject of elections, which it requires no argument
to show, in the very nature of things is of more than
local concern, may act independently of the provisions of
the state constitution and the general laws relating thereto.
A construction of this article that leads to a result so ab-
surd and utterly impossible is palpably wrong and should
not have the sanction or approval of the courts. That the
entire state is interested in having the qualifications of
electors, offenses against election laws and punishments
therefor, methods of conducting election contests, pro-

visions for the preservation of the purity of the ballot, fixed and defined throughout the state by uniform laws, and that the sovereign power of the state alone can do this, seems so plain as to amount practically to a demonstration.

The state constitution declares that the general assembly shall pass laws to guard against abuses of the elective franchise and to secure the purity of elections, and statutes have been enacted in compliance with this mandate. It is not possible that in the city and county of Denver this provision of the constitution, and the wise, wholesome and beneficient laws passed pursuant thereto, have been swept aside, that they are no longer in force there, and that the people of that locality are in this respect freed therefrom and have ceased to be subject thereto. Those laws, and the above referred to provision of the constitution, with others thereof, concerning elections and the exercise of the elective franchise, were in force in that territory prior to the adoption of article XX, and unless we find something therein setting them aside they are still so in force.

In *People ex rel. v. Sours*, 31 Colo., page 369, it was contended that article XX displaces and was intended to displace the constitution and the laws of the general assembly, and to give to the people of the city and county of Denver a free hand in all things, with the exclusive power to make, alter and revise their charter in any and every particular; but in the opinion in that case, emphatically denying that contention, this court, speaking through Mr. Justice Steele, said:

"Even by constitutional amendment, the people cannot set apart any portion of the state in such manner that that portion of the state shall be freed from the constitution, or delegate the making of constitutional amendments

concerning it to a charter convention, or give to such charter convention the power to prescribe the jurisdiction and duties of public officers with respect to state government as distinguished from municipal, or city, government. * * * Under the constitution of the United States, the state government must be preserved throughout the entire state; and it can be so preserved only by having within every political sub-division of the state, such officers as may be necessary to perform the duties assumed by the state government, under the general laws as they now exist, or as they may hereafter exist. * * * The provision that 'Every charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable,' completely contradicts the assumption that the amendment regards such duties as being subject to local regulation and control. The amendment is to be considered as a whole, in view of its expressed purpose of securing to the people of Denver absolute freedom from legislative interference in matters of local concern; and, so considered and interpreted, we find nothing in it subversive of the state government, or repugnant to the constitution of the United States."

And in *People ex rel. v. Cassiday,* 50 Colo. 503, at page 509, discussing matters bearing directly on this same proposition, it is said:

"The people of the city and county of Denver have not been given, and do not have, the power by charter to in any way change the duties of governmental officers, so far as they relate to state and county affairs, and there can be no ground for such contention if article XX be properly read and understood. The city and county of Denver has not been freed from the constitution. It is as much subject to it as any other part of the state. Ar-

ticle XX is a part of the constitution. Upon its adoption
certain portions of the constitution, as it theretofore ex-
isted, became inapplicable to this particular territory, be-
cause of the express provision of the new article. This
article, to the extent which it undertook to do so, being
the last expression of the people upon the subject, modi-
fied the constitution so far as it applied to the territory in
question, and certain provisions thereof became inap-
plicable therein. Article XX is a grant of power to the
people of the city and county of Denver, where thereto-
fore no power in that respect existed, to do certain speci-
fic things, relative to the designation of agencies to dis-
charge in that territory governmental duties fixed by the
constitution and general laws. They have just such
power and authority in this behalf as the article gives
them, no more, no less."

And again, at page 514, in that opinion, it is said:

"As matters now stand, there is nothing whatever
in article XX which gives to the people of the city and
county of Denver power to legislate upon anything what-
ever, concerning matters of state and county govern-
mental import, except merely the designation of certain
agents to perform therein the acts and duties incident
thereto. It may be that the people of the city and county
of Denver have, in some particulars, by their charter pro-
visions, exceeded the grant of power given them, and if
so, those matters are for correction in proper proceedings
to that end. No such questions are now before this court,
either for consideration or decision."

Also again, at page 509 of that opinion, it is said:

"All that article XX purports to do relative to county
offices is to provide that the people of the city and county
of Denver, through their charter, shall designate the
agencies, which are to discharge the respective duties and

functions which pertain to them. There is no warrant or authority, in article XX to the people of the city and county of Denver to alter, change or dispense with such acts and duties. They remain, as before, subject to the constitution and general laws, and are exclusively under the control of the legislature."

It is manifest, from these excerpts from former opinions of this court, that no part of the constitution of the state has been set aside by article XX, unless directly so, or by necessary implication, through some one or more provisions of that article. Where the constitution and general laws of the state have not been, either by direct provision or necessary implication, set aside, they are as much in force in the city and county of Denver as they are in other portions of the state. The purpose of article XX was to give to the people of the city and county of Denver exclusive control in matters of local concern only. The people of the city and county of Denver have no power whatever to legislate by their charter upon matters of state and county governmental import and character. The fact that the authority given by article XX to the people of the city and county of Denver to legislate was confined and limited solely to local matters was the precise thing that made it possible for the courts to uphold and enforce it. If by article XX it had been undertaken to free the people of the city and county of Denver from the state constitution, from statute law, and from the authority of the general assembly, respecting matters other than those purely of local concern, that article could not have been upheld.

Keeping in mind the fact that the state constitution is a limitation upon the powers of the general assembly, and that but for inhibitions found therein its legislative power is plenary, let us examine article XX and see

whether by its express terms, or by implication, neces-
sary or otherwise, a limit of any sort is placed upon the
general assembly respecting the enactment of laws to
govern and control the conduct of elections in the city and
county of Denver. We search this article in vain for a
single expression which hints at or even suggests any
such limitation. There is no provision in article XX by
which, upon any pretext, either directly or indirectly, it
can be said that it is sought thereby to in any respect
change the constitution of the state, or the laws in force
under it, upon the subject of elections, except as herein-
after pointed out. The only special power thereby given
the city and county of Denver upon this subject, beside
permitting therein the use at elections of the automatic
voting register, is to fix the term, which includes the
time of election, and to designate the officers who, as
agents, are to perform in that municipality state and
county governmental functions. Except as thus modified,
the state constitution and general laws concerning elec-
tions remain in full force and effect, and are as much
applicable to the city and county of Denver as to any other
section of the state.

The contention is that the exclusive power having
been given to the citizens of the city and county of Den-
ver, by article XX, to amend their charter, or to adopt a
new charter, or to adopt any measure as therein provided,
the power·is with the people to provide for the conduct
and control of elections as they may see fit. By every
decision of this court, from the *Sours* case, *supra,* down
to and including the case of *Hilts, et al. v. Markey, et al.,*
decided February 21, 1912, which is the last expression
upon this subject, it has been held that this power extends
to nothing except matters of local concern. All elections
are public in character, and are of governmental and

state-wide importance, rather than of local or municipal interest merely, hence must be under the control and regulation of the state constitution and general laws. The right to vote comes from the sovereign authority of the state, and that right can only be fully preserved and enforced by the same authority. Every citizen of the commonwealth is interested in the purity of elections, which consists chiefly in affording qualified electors an opportunity to vote and have their votes counted, and in preventing those not qualified from voting. It means protection, in the exercise of this right, to those entitled to have it. The right of the elector to be thus safeguarded carries with it the corresponding duty on the part of the state to furnish all needed protection. It is a matter of general public concern that, at all elections, such safeguards be afforded. The state at large is interested in the purity of every election, municipal or otherwise, and it must be apparent that it is only through the power of the sovereign state itself that purity in elections can be obtained. In determining what is of local, and what is of state interest in this connection, the right of the elector to the protection of the state, which cannot be fairly doubted, is a potent factor.

The distinction between the subject matter of this suit and the matters involved in *Denver v. Hallett,* 34 Colo. 393, and *Londoner v. City,* 119 Pac. (Colo.) 156, is that in the latter cases purely local matters were under consideration, while here the matter involved is one of public and general interest. That the people of the city and county of Denver cannot legislate through their charter upon the latter subject is settled by all of our decisions.

The vital question here involved is whether the regulation, control and management of elections is of govern-

mental state import and character? This being answered in the affirmative, and the judgment of the court below; being in harmony with that view, is affirmed.

*Judgment affirmed.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL not participating.

Mr. JUSTICE MUSSER dissenting.

Mr. JUSTICE WHITE concurring :

We have repeatedly held that article XX of the constitution vests in the people of the city and county of Denver supreme legislative power in municipal matters, and frees them from legislative interference by the general assembly in respect thereto. But we have never held that the control and conduct of elections of public officers at any time or place, within the state, is solely of municipal or local concern. On the contrary, it seems clear, under the express provisions of the constitution, that the exercise of the elective franchise must necessarily be under the control of the sovereign power. The power vested in the people of the city and county of Denver can in no wise infringe upon, or invade the power retained by all the people of the state to themselves, or to the general assembly, which is the representative of all the people. So, if we take the constitution as it stands, with article XX written therein, and construe it as a whole, we may readily ascertain and distinguish the legislative powers of all the people to be exercised by and through the general assembly, and the legislative powers of a portion of the people which may be exercised by the people of the municipality known as the city and county of Denver. Let us briefly consider some of the provisions of the constitution as it now is.

Sec. 2 of article XX, *inter alia*, declares that: "The officers of the city and county of Denver shall be such as by appointment or election may be provided for by the charter; and the jurisdiction, term of office, duties and qualifications of all such officers shall be such as in the charter may be provided; but every charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable."

The language quoted is the sole basis of the contention that power is vested in the people of the city and county of Denver to control and conduct elections therein. Even if this provision stood alone, we think it doubtful if such construction could be properly ascribed to it. The purpose of the section is apparently plain. It deals with officers of the city and county of Denver, and, *inter alia*, declares, that they "shall be such as by appointment or election may be provided for by the charter." Now, the subject dealt with is officers, not elections or appointments. Under the provision two classes of officers may exist: one, an appointed class, and the other, an elected class. The mandate of the constitution is, that the charter shall provide as to the two classes. It does not undertake to vest the control or conduct of such elections in the framers of a charter. If this be not the meaning of the section when standing alone, it certainly is its meaning when considered in connection with other constitutional provisions. Sec. 11 of article VII says: "The general assembly shall pass laws to secure the purity of elections, and guard against abuses of the elective franchise." If the general assembly has no power over the control and conduct of elections within the city and county of Denver, how can it pass laws to secure the purity of elections and guard against abuses of the elective franchise therein?

How can the general assembly secure the purity of elec-
tions in which it has no concern or over which it has no
jurisdiction? How can it guard against abuses of the
elective franchise when exercised upon matters not within
the scope of its legislative power? How can it perform
the constitutional duty, by general law, to regulate the
manner of trial and designate the courts and judges by
whom all classes of election contests, not otherwise pro-
vided for in the constitution, shall be tried?

It is sought to answer this by the assertion that the
constitutional command to the general assembly to pass
laws to secure the purity of elections, and to provide for
election contests, passed to the people of the city and
county of Denver so far as municipal elections are con-
cerned, and the duty in that respect rests upon the muni-
cipality, and there is no evidence to indicate that the
people of the city and county of Denver are more likely
to ignore these provisions than the legislature. For many
reasons readily apparent, such argument is logically de-
fective and unsound. The constitution places the par-
ticular duty upon the general assembly, not upon a muni-
cipality. Moreover, the argument assumes a false prem-
ise, to wit, that the control and conduct of elections for
public officers of a municipality has only a local or muni-
cipal significance. The character of power that controls
and regulates in such matters is the crux of the contro-
versy here. As a crime or misdemeanor in this state is
the intentional violation of a public law, and can only be
punished as a crime by the sovereign power, in the name
of the people of the state, how can the municipality of the
city and county of Denver pass laws to secure the purity
of elections? So, contrary to the assertion on behalf of
plaintiffs in error, there is evidence to indicate that the
people of the city and county of Denver are more likely

than the general assembly to ignore those provisions of the constitution. The evidence is, that the latter, having the power, can perform the duty imposed; the former, having no such power, are impotent in that respect.

But it is next said, that article XX does not deprive the general assembly from passing laws with respect to the purity of elections which will cover municipal elections in the city and county of Denver; that it may declare an act committed in any place in the state a crime; that murder, larceny and all other crimes committed in the city and county of Denver are defined and punished under the general laws of the state, and so illegal voting, ballot box stuffing, and other election crimes in municipal elections therein may be defined and punished under the general laws of the state.

The assertion is evidently true, but can not be so if the exclusive power to regulate and control such municipal elections is vested by the article in the people of the city and county of Denver. While it is true the general assembly may declare an act committed in any place in the state a crime, the act constituting the crime must be against a state law, not a law applicable alone to a municipality. It is also true that murder, larceny and all other crimes committed in the city and county of Denver are defined and punished under the general laws of the state, but it is equally true that every element which it takes to constitute murder or larceny in one portion of the state is essential to constitute such offenses respectively in every other part of the state. So, what constitutes illegal voting, ballot box stuffing, or other crimes against the election law in the city and county of Denver, must necessarily be an essential element in such crimes elsewhere throughout the state. This is necessarily true because the constitution inhibits the enactment of a special

or local law where a general law can be made applicable. Art. V, section 25.

A further argument is, that in the various charters under which the municipality known as Denver, operated prior to the adoption of article XX of the constitution, the general assembly provided for the appointment and election of municipal officers, and the preparation for and conduct of municipal elections, and that the general assembly having previously exercised such power, the people of the municipality of the city and county of Denver can exercise like power after the adoption of the article, because this court has repeatedly declared that the article conferred upon them "every power possessed by the legislature in the making of a charter for Denver." The argument is based upon the assumption, that "before the adoption of article XX, Denver operated under charters granted by the general assembly." Herein lies the error of the argument. Prior to the adoption of article XX, Denver operated under a charter granted by the territorial legislature, not acting under the constitution, with such amendments to that charter as the general assembly, under the constitution, enacted. As the rights of the municipality then known as Denver, were under a charter unaffected by the constitution, the general assembly presumably acted upon the theory, that a general law was inapplicable, and under the constitutional provision, section 25, article VII, *supra*, embodied in a special law the constitutional requirement imposed upon it to control and regulate the elective franchise.

Moreover, it was the general assembly that made such provisions, and thus the power exercised was within the strict letter and spirit of the constitution. When it is conceded, as it is, that the state is concerned in municipal elections in Denver in the same regard that it is to the

police regulations thereof, the unsubstantial character of the position of plaintiffs in error is made more apparent. The regulation or prohibition of the sale of intoxicating liquors is essentially a police regulation, yet we have declared that the sovereign power of the state, by the adoption of article XX of the constitution, in no wise surrendered the control thereof to the people of the city and county of Denver, and that such matters are to be governed by general law enacted by the general assembly. Is it possible that the exercise of the elective franchise in such territory is of less concern to the sovereign power, to wit, the people at large, than is the regulation or sale of intoxicating liquors therein? The wrongful exercise of either engenders disrespect for law, uproots the conscience of the people, and may subvert the foundations of government. Both essentially concern the state in its entirety. We should neither add to, subtract from, nor subvert the constitution of the state, and for that reason the judgment of the trial court should be affirmed.

Mr. JUSTICE MUSSER dissenting:

Were the question of the appointment of a registration committee and judges of election for the state election in November before this court, the reasoning and conclusion of the majority, as it appears to me, would be more pertinent. The duties to be performed in Denver in the preparation for and conduct of the November election are duties to be performed by county officers. They are such duties as have been frequently called by this court, state governmental duties, concerning which the people of Denver cannot legislate except to designate in their charter who shall perform them.—*People v. Sours,* 31 Colo. 369; *People v. Cassidy,* 15 Colo. 503; *Hilts v. Markey,* 52 Colo. 382.

It was made plain in the *Cassiday* case that there are no county offices in Denver as such, but that the duties appertaining to such offices remain as before to be performed by agencies designated in the charter. In other cities the line of demarcation between county offices and the duties appertaining thereto, and municipal offices and their duties is sharply defined. In Denver, while there are no county offices as such, but only municipal offices, the line of demarcation between the duties appertaining to county offices and those appertaining to municipal offices is just as sharply defined. For instance, in other cities, there is a county treasurer and a municipal treasurer. The duties to be performed by the county treasurer are prescribed by statute, while those to be performed by the municipal treasurer are prescribed by the charter, whether that charter is the general law appertaining to towns and cities, a special charter granted by the general assembly, or one adopted under the provisions of article XX and the line between the two classes of duties is clear. In Denver there is a municipal treasurer only, and the charter, in obedience to the mandate of article XX, requiring the charter to designate the officers who shall perform the duties of county officers, provides that the municipal treasurer shall perform the duties of county treasurer. While the duties appertaining to each office are to be performed by the same person, yet the line between them is as well defined as when they are performed by two persons. For state elections, at which state, district and county officers are to be elected, the general assembly may prescribe certain duties to be performed with respect thereto by certain county officers, and it has prescribed in the act of 1911 that certain duties shall be performed by the county clerk and county commissioners. These are

state governmental duties, referred to in the cases cited above. They cannot be changed or regulated by charter, but in Denver, in obedience to the mandate of article XX, the charter shall designate who shall perform these state governmental duties. That is as far as the charter can go with respect to them. The Denver charter, in section 156, has designated who shall perform these duties by providing that the election commission shall perform "the acts and duties required of a board of county commissioners, county clerks and justices of the peace in all matters pertaining to registration and elections." With respect to these duties, the election commission performs the duties of county officers, which duties are prescribed by the legislature and cannot be interfered with by the charter. To my mind, the performance of these duties is not before us in this case. Those duties relate to another and different registration committee and set of election judges to be appointed under the provisions of the state laws governing state and county elections.

The reasoning and conclusion of the majority, it appears to me, are not applicable to the case now before the court. The election commissioners are municipal officers, and as such are charged with certain municipal duties as well as the state governmental duties aforesaid. It is plain from the decisions of this court, appertaining to the right and power of the people of Denver to legislate in their charter, that the general assembly has no control over municipal duties. These municipal duties of the election commission are prescribed by section 174 of the charter and can relate only to municipal elections, at which the municipal officers of Denver are to be elected in May. The case before us relates to the appointment of election judges for the municipal election in May. The

duties to be performed by the election commission, in preparation for and in the conduct of the municipal election in May, pertains to local and municipal government, over which the general assembly has no control under article XX of the constitution if the prior decisions of this court are followed, any more than it has control over the municipal duties of a municipal treasurer, or the municipal duties of a municipal clerk in Denver. Therefore, in the appointment of a registration committee and a set of election judges for the state election, the election commission performs the duties of county officers and should appoint such judges from the lists furnished by the chairmen of the respective political parties as provided in the act of 1911; but in the appointment of a set of judges for the municipal election in May the commission performs the duties of municipal officers only and should appoint such judges in the manner provided in the charter, which does not provide for any list from the chairmen of the respective political parties. If the act of 1911 attempts by legislative interference to regulate and control the local municipal election it is to that extent ineffective.

In his dissenting opinion in the case of *People v. Johnson*, 34 Colo. p. 189, the reasoning of which dissenting opinion was adopted in the *Cassiday* case and is now the express pronouncement of this court, Mr. JUSTICE STEELE said:

"For when the people of the state granted to Denver by article XX power to select public officers, fix their salaries, designate a time for their election, although they relinquished a power theretofore retained by them or delegated to the legislature, they but granted Denver power to legislate in matters of local concern."

Section 2 of article XX says:

"The officers of the city and county of Denver shall

be such as by appointment or election may be provided for·by the charter; and the jurisdiction, term of office, duties and qualifications of all such officers shall be such as in the charter may be provided."

To me that language clearly means that the charter may provide what officers the municipality may have, and may provide for their appointment or election. How can it be said under that section 2 that the charter may provide what officers the city and county of Denver shall have and may not provide that such officers be appointed. or elected, but that the general assembly may provide by· law for their appointment or election? Certainly under this section the charter may provide not only what officers the municipality may have, but also for their appointment or election. It is obvious that if the charter should provide that certain municipal officers of Denver shall be appointed that the general assembly could not step in and say by whom, or how, or when they shall be appointed. This being true with respect to appointments, it is equally true with respect to the election of such officers as the. charter may provide shall be selected by election. How can it be said that if the municipal officers shall be selected by election they shall be selected as the general assembly may provide, and when they are to be selected by appointment they shall be selected as the charter may provide when the words "appointment" and "election". are used in the same clause and in the same connection?

It is plain from the above quotation from *People v. Johnson, supra,* that the people of the state granted to Denver power to select its public officers and when the people did so they but granted to Denver power to legislate in matters of local concern. In the case of *People v. Sours, supra,* at p. 387, it was said:

"The amendment (article XX) is to be considered·

as a whole, in view of its expressed purpose of securing to the people of Denver absolute freedom from legislative interference in matters of local concern; and, so considered and interpreted, we find nothing in it subversive of the state government, or repugnant to the constitution of the United States."

It is thus plain to me, as a matter already determined by this court, and as a fact flowing from the very nature of the thing itself, that the selection of the public municipal officers of Denver is a matter of local concern —a local municipal affair, concerning which article XX has secured to the people of Denver absolute freedom from legislative interference. In cities and towns organized and operating under the general statutes, or a special charter from the general assembly, there is no doubt that the general assembly may and does legislate concerning matters pertaining to municipal elections, within constitutional limits. By general law, applicable alike to all towns and cities operating thereunder, it may prescribe a different time, a different ballot, different rules and regulations for the conduct of municipal elections therein than are prescribed for state and county elections in November, except as it may be limited by the constitution. Those town and city elections are municipal local elections and pertain to local government in the municipalities where held, and the general election law for state and county elections does not apply to them except in so far as is expressly provided by statute. The duties to be performed by the city or town officers with respect to these elections are purely municipal and not state governmental duties. By the adoption of article XX of the constitution the entire population of the state conferred upon the people of Denver all the powers concerning their local municipal government theretofore possessed by the legislature.

This court has said so emphatically. *In Denver v. Hallett,* 34 Colo. 393 at 398-9, Mr. JUSTICE STEELE, delivering the opinion of this court, said:

"The purpose of the twentieth article was to grant home rule to Denver and the other municipalities of the state, and it was intended to enlarge the powers beyond those usually granted by the legislature; and so it was declared in the article that until the adoption of a new charter by the people that the charter as it then existed should be the charter of the municipality, and further that the people of Denver shall always have the exclusive power of making, altering, revising or amending their charter; and further that the charter, when adopted by the people, should be the organic law of the municipality and should supersede all other charters. It was intended to confer not only the powers specially mentioned, but to bestow upon the people of Denver every power possessed by the legislature in the making of a charter for Denver."

In *Londoner v. City and County of Denver,* 119 Pac. 156 at 158-9, this court said:

"By that decision we determined that the powers enumerated in section 1 of article 20 of the constitution do not constitute a limitation of the powers conferred on the municipality; and, moreover, the article conferred upon such people 'every power possessed by the legislature in the making of a charter for Denver.'"

Before the adoption of article XX, Denver operated under charters granted by the general assembly. In the various charters thus granted, the legislature provided for the appointment and election of municipal officers and the preparation for and conduct of municipal elections.— Sess. Laws 1883, p. 72; Sess. Laws 1885, p. 98; Sess. Laws 1893, p. 190.

There is no doubt that the preparation for and the conduct of municipal elections in Denver were had in accordance with the provisions of these charters and the constitution.    While, after making specific provisions, these charters generally provided that the matters provided for by the general state law should be used as far as applicable when no other provision was made in the charters, yet the state election law came in to govern in these elections so far as it did govern, only because the charter specifically provided that it should.    Any provision in the charter thus granted by the general assembly, providing for a different method or detail than that provided for in the general state law, prevailed over the latter.    There is no doubt that the general assembly could have provided for all details and methods with regard to elections in Denver in the charter which it had the power to grant, entirely different from the state law, keeping of course within the limits of the constitution. The judges of election were appointed in accordance with the provisions of these charters and the general state law was never regarded unless the charter specifically provided that it should be, so far as applicable when no other provision was made.    That was the power possessed by the legislature or general assembly with respect to elections in Denver under the legislative charter, and as is seen from the decisions of this court quoted above, that power, under article XX descended to the people of Denver and they were given the power to legislate with respect to their municipal elections which the general assembly or legislature theretofore possessed.

While article XX freed the people of Denver from legislative interference by the general assembly, so far as their local government was concerned, I do not wish to be understood as holding that this article freed them from

the constitution. The legislative power theretofore possessed by the general assembly over such matters was of course subject to the limitations of the constitution, and when the people of Denver succeeded to the legislative powers of the general assembly, with respect to their local affairs, as has been determined by this court, of necessity they took such powers subject to the same constitutional limitations.

I cannot notice specifically each of these general constitutional limitations, but will refer to them somewhat generally to illustrate what I mean. For instance, section 5 of article II provides that all elections shall be free and open and no power shall interfere to prevent the free exercise of the right of suffrage. There can be no doubt that the people of Denver, in legislating for their municipal elections, must observe that section, the same as the general assembly. Article VII of the constitution relates to suffrage and elections. It provides the qualification of electors, privilege of voters, eligibility for office, that elections shall be by ballot, and other general provisions. No argument is necessary to show that the qualification of electors and the other general provisions as fixed in that article limited the power of the general assembly to legislate concerning elections in towns and cities, whether by general law or special charter, and it necessarily follows that the people of Denver who took the power theretofore possessed by the general assembly to legislate concerning municipal affairs in Denver took it subject to the same constitutional limitations. Of course section 7 of article VII, which fixes the time for the general state and county election, is and always has been inapplicable to Denver or to any other city in its municipal capacity. If the people of Denver succeeded to the powers of the general assembly to legislate with regard

to their local affairs, then section 11 and section 12 of that article, which provides that the general assembly shall pass laws to secure the purity of elections and to provide for election contests must have passed to the people of Denver so far as their power to legislate with regard to their local affairs is concerned. There is no evidence to indicate that the people of Denver are more likely to ignore these provisions than the legislature. On the contrary, it must be assumed that any officer or body of people charged with the performance of a duty will discharge it, and the fact that they may not discharge it is not a contingency within the meaning of the law that will tend to nullify the power of performance. *People v. Sours, supra,* 388. The fact is that the people of Denver, in their charter, have legislated to secure the purity of elections in their city. Furthermore, article XX does not deprive the general assembly from passing laws with respect to the purity of elections that will cover municipal elections in Denver. The general assembly may declare an act committed in any place in the state a crime. Murder, larceny and all other crimes committed in Denver are defined and punished under the general laws of the state. So equally can illegal voting, ballot box stuffing or other election crimes, in any election including municipal elections in Denver or elsewhere, be defined and punished under the general law of the state making them crimes and prescribing the punishment therefor. The same act that constitutes a crime under the state law, is frequently made a violation of a town or city ordinance, and the actor is made to suffer the penalty prescribed by the state law as well as that prescribed by the ordinance.

It is strongly urged that the people of the whole state are concerned in municipal elections in Denver because the state is interested in the purity of elections, and

that, therefore, the state should have the power to regulate all elections, and municipal elections in Denver are put on a different basis in this regard than other municipal affairs. It appears to me conclusively from what I have said that the state gave, the people of Denver exclusive power, subject to constitutional limitations, over their municipal elections, and having given such power it thereby manifested that what concern it had it was willing to and did trust to the people of Denver. There is no doubt that the state is concerned in municipal elections in Denver, but it has the same concern in that regard that it has with respect to the police regulations in Denver, the same concern that it has with respect to the material welfare and prosperity of Denver, the same concern that it has that everything the people of Denver do in the management of their local affairs will be for the best, and for the advancement of good morals and good government. If such concern is regarded as sufficient to deprive the people of Denver of the power, expressly given them, to regulate and control by charter their municipal elections, then, for the like reasons, these people can be deprived of most, if not all, of the powers given them in article XX, the article wiped out, and home rule for Denver, which has been accepted as real and substantial, and which this court has said was intended to be accomplished by that article, will exist no more.

It is also urged that, because the charter shall designate the persons who shall perform the duties of county officers, the state has such interest that it should control the municipal election. The power to so designate was expressly given to the people of Denver in article XX by the people of the entire state by constitutional amendment. It was thus bestowed without qualification, reservation or limitation. The language used in giving it is

plain and unambiguous. That the people of the state had
a constitutional right to grant this power to the people of
Denver was finally and conclusively settled by this court
in the *Cassiday* case. By granting this power as they
did, the people of the entire state manifested and declared
that it was their concern and policy that the people of
Denver should have this right and power freed from legis-
lative interference by the general assembly, until the same
people that gave it shall take it away by constitutional
amendment. What right has any court to say that it is
the concern of the state that the general assembly shall
control the matter of municipal elections in Denver, when
the people of the whole state have declared that it is
their concern that the people of Denver in their charter
shall control such elections, subject only to such consti-
tutional limitations as are applicable?

Speaking of article XX, this court in the *Cassiday*
case, at page 507, said:

"It (article XX) is not only a part of the consti-
tution, but it is there to stay, until the authority which
voted it in shall vote it out. It, as any other part of the
constitution, is to be given force and effect according to
its plain intent, purpose and meaning. When the whole
people speak through a fundamental law, or by amend-
ment thereto, not in conflict with the federal constitution,
all should hear and heed, more especially the courts,
whose function is to interpret, and, where possible, up-
hold and enforce, not nullify, overthrow and destroy the
law."

And on page 508, speaking directly with reference
to section 2 of article XX, which I have quoted above and
which relates to the power of the people of Denver to
provide in their charter for the appointment or election of
their municipal officers, and that the charter shall desig-

nate the officers who shall respectively perform the acts and duties required of county officers, this court said:

"There is no element of uncertainty about this provision. It needs no construction; it interprets itself. The question is, shall it be given its plain, obvious and common-sense meaning, and enforced accordingly, as other provisions of the constitution are interpreted and enforced? There is no apparent reason for doing otherwise. Why scrutinize article XX in hostile spirit or treat it as an interloper? It is a child of the same parentage as the original constitution. This court has again and again held it to be a part thereof, and it is so in all its provisions, and for all purposes, according to its clear intent."

I say now, in speaking with reference to the matter in point, there is no element of uncertainty about this provision. It needs no construction and it interprets itself. The question is, shall it be given its plain, obvious and common-sense meaning and enforced accordingly? Why engraft upon it something that is not there? Why say, when the people of the state have declared that the people of Denver should appoint or elect their officers as provided in their charter, that the people of Denver shall not do it, but that they shall do it as the general assembly may provide?

And on page 509, speaking with reference to the duties of county officers, and of the provision that the charter shall designate the persons who shall perform them, this court said:

"The whole people of the state have declared, by their fundamental law that this may be done. That was a question of governmental policy for the people to determine, and this policy, when once declared, may not be ruthlessly set aside by the courts, except it is shown

to violate in some way the federal compact with the state."

If the people of the state have settled as a question of governmental policy that the people of Denver may designate in their charter who shall perform the duties of county officers, by what right has the court to say now that that is not the governmental policy declared by the people, but that the policy declared by the people is, that the general assembly shall step in and control in this matter?

Enough has been said to conclusively convince me that I must dissent from the opinion and conclusion of the majority of this court, and it is my opinion that the election judges for the municipal election in Denver should be appointed by the election commission in accordance with the terms of the charter.

It follows from this that the judgment of the district court was wrong and should be reversed; that the cause should be remanded and the complaint dismissed.