No. 12,650.

PEOPLE EX REL. HERSHEY *v.* McNICHOLS, AUDITOR.

(13 P. [2d] 266)

Decided June 20, 1932.

142

Messrs. HAWKINS & HAWKINS, for plaintiff in error.

Mr. THOMAS H. GIBSON, Mr. GEORGE HETHERINGTON, Mr. CHARLES H. HAINES, Mr. FRANK L. HAYS, for defendant in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

HAROLD R. Hershey, sought, by mandamus, to compel the audit of his claim against the City and County of Denver. An alternative writ was issued directed to George D. Begole, as auditor. A demurrer to the writ was sustained and the action was dismissed. After the writ of error was issued W. H. McNichols became auditor and, as such, was substituted for Begole as defendant in error.

On September 29, 1929, the state board of health appointed Hershey local registrar of vital statistics for the Denver registration district. On January 6, 1930, the state registrar, pursuant to the provisions of section 20 of the act of 1907 (C. L. §989), hereinafter quoted, issued his certificate to the effect that, for the quarter ending

December 31, 1929, $536.75 was due Hershey for his services, "after the approval of the auditing officials" of Denver. The certificate was presented to Begole for audit. Begole rejected the claim for the sole reason that there was no liability on the part of the City and County of Denver to pay for Hershey's services. The alternative writ states that Begole refused to audit and consider the verity of the claim and to allow or reject it as a result of such audit and consideration.

■ 1. Is mandamus the proper remedy?

Courts will not, by mandamus, direct the manner in which the discretion of an officer shall be exercised; nor is such relief sought in this case. Courts, however, will direct an officer to proceed and exercise the discretion vested in him by law. In rejecting the claim, Begole did not act in the exercise of his discretion, but took the position that the claim was illegal, and that for that reason he had no discretion to approve or reject it, but was bound by section 139 of the Denver Charter to withhold his approval. That section imposes upon him the duty to "see that * * * no * * * money '[is] disbursed * * * contrary to law or ordinance." In such circumstances, it cannot be said that there was an audit of the claim. The refusal to approve a demand, on the ground of want of lawful authority to approve it, amounts to a refusal to act upon it. *People, ex rel. v. Board of Supervisors,* 28 Cal. 429; *Chipman v. Wayne County Auditors,* 127 Mich. 490, 86 N. W. 1024; *Dufton v. Daniels,* 190 Cal. 577, 213 Pac. 949; *The King v. Justices of Kent,* 14 East, 395. And see the discussion in *Hull v. Supervisors,* 19 Johnson (N. Y.), 259, and *Ryan v. Board of Audit,* 27 N. Y. S. 169.

■ If the Legislature has the power to impose upon the City and County of Denver liability to pay for the services of a local registrar of vital statistics appointed by the state board of health, the trial court should have overruled the demurrer, and, if Begole then had elected to stand upon his demurrer, the court should have awarded a peremptory writ of mandamus. If, however, the

Legislature has no such power, the judgment should be affirmed, for, there can be no audit, within the meaning of the law, where the auditor has no legal power to allow the claim.

2. Has the Legislature the power to impose such liability upon the City and County of Denver?

In 1907 the Legislature passed an act (S. L. 1907, c. 112, C. L. c. 29) entitled "An act to provide for the registration of all births and deaths and the issuance of burial or removal permits; to establish registration districts and a central bureau of vital statistics; to provide for the preservation of a record of vital statistics * * *." The provisions of the act that are material here are as follows: The state board of health is given charge of the state system of registration of births and deaths; is required to prepare methods and blanks for obtaining and preserving records; is required to insure faithful registration in the several local districts and in the central bureau of vital statistics; and is required to appoint a local registrar of vital statistics for each district, except where other officials are officiating as registrars of births and deaths under local ordinances, in which event such officials continue to act as registrars, subject to the provisions of the act and the rules and regulations of the state registrar. The secretary of that board is made state registrar of vital statistics, and, as such, is charged with the efficient execution of the provisions of the act throughout the state, and is given supervisory power over local registrars. The state is divided into registration districts. "Each city, incorporated town, and county exclusive of such cities or incorporated towns as may be situated within its boundaries, shall constitute a primary registration district." There are elaborate provisions for the collection and preservation of data concerning births and deaths. The local registrar is required to make and retain copies of all birth and death certificates registered by him, and transmit the original certificates to the state registrar. Before the body of a deceased person

can be buried or otherwise disposed of, a permit must be obtained from the local registrar. In case of death from a disease held to be infectious, contagious, or communicable, and dangerous to the public health, no such permit may be granted, except under conditions prescribed by the state and local boards of health. Copies of records of births and deaths, certified by the state registrar, are made prima facie evidence of the facts appearing therein. Section 20 of the act (C. L. sec. 989), provides: ''That each local registrar shall be entitled to be paid the sum of twenty-five cents for each birth and each death certificate properly and completely made out and registered with him, and correctly copied and duly returned by him to the state registrar, as required by this act; Provided, that in cities, incorporated towns or counties, in which the clerk, health officer, or other official acting as registrar, receives a fixed salary, in lieu of fees, no further compensation shall be paid for the duties required by this act. And in case no births or no deaths were registered, during any month, the local registrar shall be entitled to be paid the sum of twenty-five cents for each report to that effect, promptly made in accordance with this act. All amounts payable to registrars or sub-registrars under the provisions of this section shall be paid by the treasurer of the incorporated town, city or county in which the registration district is situated upon certification of the state registrar of vital statistics and after approval of the proper auditing officials of such incorporated town, city or county. And the state registrar shall quarterly certify to the treasurers of the several towns, cities or counties the number of births and deaths registered, with the names of the local registrars, and the amounts due each at the rates fixed herein.'' Any violation of the act is made a misdemeanor.

■ Article XX of the state Constitution gave to the people of the City and County of Denver exclusive control in matters of local concern only. After the adoption of that article, the city and county, as a municipality,

continued to be, as the city was before, an agency of the state for the purpose of government; and "as much amenable to state control in all matters of a public, as distinguished from matters of a local, character, as are other municipalities." *Keefe v. People,* 37 Colo. 317, 87 Pac. 791; *Mauff v. People,* 52 Colo. 562, 123 Pac. 101; *Denver v. Tihen,* 77 Colo. 212, 235 Pac. 777; *Denver v. Bossie,* 83 Colo. 329, 266 Pac. 214. The matters dealt with in the act of 1907, supra, are not of local concern only; they are of general public importance. The records required to be kept are such as will be useful in the administration of the laws concerning public health, elections, wills, descent of property, marriage, guardian and ward, adoption, apprentices, crimes, juvenile delinquency, child labor, motor vehicles, and other laws. Certified copies of the records are made prima facie evidence of facts, the proof of which may be absolutely essential to the just administration of those laws.

■ The act tends directly to promote the public health, safety and welfare, and is a valid exercise of the police power. It operates in all parts of the state, including Denver and other "home rule" cities. See a discussion of the Tennessee Vital Statistics Act in *State v. Norvell,* 137 Tenn. 82, 191 S. W. 536. See also *Robinson v. Hamilton,* 60 Ia. 134, 14 N. W. 202. In this state we have no decision construing the act in question, but the discussions in the following cases are helpful: *Keefe v. People,* 37 Colo. 317, 87 Pac. 791 (eight hour law); *Mauff v. People,* 52 Colo. 562, 123 Pac. 101 (election law; registration committee); *Denver v. Bossie,* 83 Colo. 329, 266 Pac. 214 (act concerning use of Colorado materials in public works).

■ 3. Is the act of 1907 constitutional?

It is contended by counsel for the auditor that the Legislature is without power to make the compensation of the local registrar a charge upon the treasury of the City and County of Denver, as by the act of 1907, supra, it attempts to do, and that in that respect the act is un-

constitutional. It is said that if the local registrar is a municipal or a county officer, his appointment and compensation must, under Article XX of the Constitution, be as provided by the charter; that if he is an officer or agent of the state, his compensation must be paid by the state. Hershey is an officer of neither a city nor a county, but of a registration district, a state agency created by the Legislature and charged with the administration of governmental duties. The circumstance that its boundaries happen to coincide with those of the city does not make it any the less a district. His duties are not performed for the benefit of the residents of Denver only, but for the protection of the health, safety and welfare of the people of the entire state.

The Legislature has plenary power to legislate, subject only to the limitations imposed by the Constitution of the United States and that of the state. Unless its power is thus limited, it may impose upon municipalities a liability for state or general purposes. In *County of Mobile v. Kimball,* 12 Otto, 102 U. S. 691, 26 Sup. Ct. 238, the court upheld a legislative act requiring the president of the commissioners of revenue of Mobile county to issue bonds to improve the river, harbor and bay of Mobile. Mr. Justice Field, delivering the opinion of the court, said: ''Here the objection urged is that it fastens upon one county the expense of an improvement for the benefit of the whole state. Assuming this to be so, it is not an objection which destroys its validity. When any public work is authorized, it rests with the legislature, unless restrained by constitutional provisions, to determine in what manner the means to defray its cost shall be raised. It may apportion the burden ratably among all the counties, or other particular subdivisions of the state, or lay the greater share or the whole upon that county or portion of the state specially and immediately benefited by the expenditure.'' An Ohio statute required the county auditor, when apportioning funds to cities, to retain a certain portion of the funds and to place it in a district

148

health fund, to be used by the health district of which any such city is a part. An action was brought to compel the auditor to draw his warrant for the payment to Cuyahoga Heights, a "home rule" village, of the full amount to which it would be entitled had the statute not been enacted. In *State ex rel. v. Zangerle*, 103 Ohio St. 566, 134 N. E. 686, the act was held valid, the court saying: "It is also contended that as the village of Cuyahoga Heights has adopted a charter under the home rule amendment, the legislature has no authority to divert the funds of the village to the use of the health district, and it is contended that the funds which are the proceeds of levies for village purposes are the property of the village. As to this it must be again remarked that this legislation is pursuant to the intention of the legislature to provide an administrative agency to preserve the general health of the people of the state. * * * we think it clear that when the legislature in the exercise of the general legislative power conferred by Section 1, Article II of the Constitution, has adopted general laws providing sanitary and other similar regulations, such legislation is effective throughout the state, and, being effective throughout the state, the different subdivisions of the state government may be required to contribute as directed by the legislature to the carrying out of the legislation legally enacted." In *Board of Health v. Greenville*, 86 Ohio St. 1, 98 N. E. 1019, the court upheld an act authorizing the state board of health to require a municipal corporation, at its own expense, to install a sewage purification system, etc., the court saying: "The sanitary condition existing in any one city of the state is of vast importance to all the people of the state." An Oregon statute created a bridge commission, and imposed on the city of Portland a liability to pay for certain bridges to be constructed by the commission within the limits of the city. In *Simon v. Northup,* 27 Ore. 487, 40 Pac. 560, the court upheld the act. We quote the following from the opinion: "A municipal corporation * * *,

in its governmental or public capacity, is one of the instruments or agents of the state for governmental purposes, possessing certain prescribed political and municipal powers, to be exercised by it on behalf of the general public rather than for itself; and over it, as such agent, the authority of the legislature is supreme, and without limitation or restriction, other than such as may be found in the constitution. There is a line of authorities holding, and perhaps properly, that a municipal corporation cannot be burdened with a debt without its consent for a matter of local as distinguished from state purposes. * * * But it seems to be substantially agreed that when the debt or liability is to be incurred in the discharge of some duty which is imposed upon the municipality exclusively for public purposes, and in the performance of which the general public, as distinguished from the inhabitants of the particular municipality, have an interest, it is within the power of the legislature to compel it to perform such duty and incur a debt therefor.'' In *Attorney General v. Williams,* 174 Mass. 476, 55 N. E. 77, the court upheld a statute creating certain building restrictions in Boston, and imposing upon that city liability to pay damages suffered by owners of property affected by the statute. In the opinion it is said: ''It may be contended that, if the Legislature could take this right for the use of the public, it could not require the city of Boston to make compensation for it, but should have provided for the payment of damages from the treasury of the commonwealth. This contention would limit too strictly the power of the Legislature in the distribution of public burdens.''

In the absence of a constitutional limitation, the Legislature has the power to impose upon the City and County of Denver a liability to pay the local registrar's compensation. It is said that Article XX of the state Constitution imposes such limitation. We do not think so. As we have seen, that article does not relieve the City and County of Denver from legislative control

in matters of public, as distinguished from matters of local, character.

Section 2, article X, of the state Constitution, is as follows: "The general assembly shall provide by law for an annual tax sufficient, with other resources, to defray the estimated expenses of the state government for each fiscal year." We are unable to agree with counsel's contention that that provision deprives the Legislature of the power to require the City and County of Denver to pay the compensation of the registrar of the registration district situated within its limits. The Legislature may require a city, as a governmental agency, to perform, at its own expense, many duties of a governmental nature. We have given several examples of the application of that rule. The present case, we believe and hold, comes within the rule. The act of 1907, supra, is not in conflict with section 2, article X, supra.

Where there is some official performing the duties of registrar under a local ordinance, the act of 1907, supra, provides that he shall continue to perform those duties, subject to the provisions of the act and the regulations of the state registrar; and where he receives a fixed salary, in lieu of fees, he is entitled to no further compensation. Where the city does not appoint someone to perform that important public service, the state board of health is authorized to appoint a registrar of the district. This is a wise provision, designed to insure the enforcement of the act. The city cannot avoid the expense by failing to have an officer of its own selection perform the duties of registrar of the district. In the alternative writ of mandamus it is stated that there is no person performing the duties of registrar of the district under any ordinance, and the demurrer admits the truth of the statement.

The trial court erred in sustaining the demurrer to the alternative writ and in dismissing the action.

The judgment is reversed, and the cause is remanded with the direction to overrule the demurrer.