No. 19,076.

LARRY G. RETALLICK *v.* POLICE COURT OF THE CITY OF COLORADO SPRINGS, ET AL.

(351 P. [2d] 884)

Decided March 28, 1960.   Rehearing denied May 23, 1960.

Messrs. YOUNG, YOUNG & CATES, for petitioner.

Mr. F. T. HENRY, Mr. EDWIN STRAND, for respondents.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS is an original proceeding in the nature of prohibition challenging the jurisdiction of the municipal court in the city of Colorado Springs to try the petitioner, Retallick. Pursuant to the prayer of the petition, a rule to show cause was issued directed to respondents.

This court in *Geer v. Alaniz,* 138 Colo. 177, 331 P. (2d) 260, has already decided one of the points raised by petitioner. It was there held, and is controlling here, that a section of a city charter providing that no party shall be entitled to a jury trial in the municipal court is invalid. The sentence deleted from section 53 of the Home Rule Charter adopted by vote of the people of the city of Colorado Springs leaves remaining a complete, workable and enforceable provision, affording this petitioner, charged with violation of a city ordinance, having a counterpart criminal statute, the right to be tried in accordance with criminal procedure.

The only other point raised by this challenge to the jurisdiction of the municipal court is that petitioner was charged therein with reckless driving and careless driving under a city ordinance. It is asserted that the offense is one of statewide concern rather than local and municipal; that it has a counterpart criminal statute enacted by the legislature of the state of Colorado; that the statute takes precedence over the municipal ordi-

nance and requires filing of an information in a state court under rules prescribed for the conduct of criminal cases for violation of the state criminal statute.

To accept the contention of petitioner would be to adopt a doctrine of virtual premption by the state in all matters upon which the legislature has taken cognizance through enactment of a state statute. It would also strip all of the home rule cities of the state of every last vestige of local rule and local control with the possible exception of a few regulatory and licensing ordinances.

The particular ordinances with which petitioner stands charged in the Colorado Springs municipal court are as follows:

"RECKLESS DRIVING.

It shall be unlawful for any person to drive any vehicle in this city in willful or wanton disregard for the safety of persons or property. Any violation of section 24-108 of this Code where the rate of speed is fifty-five miles per hour or more shall be prima facie evidence of reckless driving. The charge of reckless driving shall include as a lesser offense the charge of careless driving as defined in section 24-107 of this Code. (Ord. No. 2432, g 1.)"

"CARELESS DRIVING UNLAWFUL.

Every person operating a vehicle on a highway, street or other public way in the city shall drive the same at a speed and in a manner which is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing; and every driver of a vehicle, in compliance with the legal requirements and the duty to use due care, shall use every reasonable means to avoid endangering or colliding with any person, vehicle or other conveyance on, or entering the highway, street or public way. (Ord. No. 2432, g 1.)"

The ordinance on reckless driving has no identical counterpart in the state statute. The provisions therein that a speed of 55 miles an hour on the city streets of

Colorado Springs is a prima facie evidence of wanton and reckless disregard of human life and safety on said streets could not be enforced under the state statute. We can take judicial notice of the fact that a speed of 55 miles an hour on open country roads and on the state highway could be well under the prima facie speed limits of 60 and 70 miles per hour, and, except in occasional posted areas, would not be a violation of state speed laws.

■ It is generally held in most jurisdictions that the individual regulation pertaining to the establishment of one-way streets, posting of stop signs, installation of traffic signals, establishment of varying speed limits, and all regulations governing movements of vehicles, street cars, and of pedestrians on streets and sidewalks is the primary function of local government. McQuillin on Municipal Corporations, sec. 24.609, et seq. And this court said in *People v. Graham,* 107 Colo. 202, 110 P. (2d) 256, that there still is a field in motor vehicle traffic regulation, local in its nature, which cannot be questioned. In *Denver v. Henry,* 95 Colo. 582, 38 P. (2d) 895, it was held that traffic regulation in street intersections was local, and to which holding this court adhered in the Graham case.

■ Reckless or careless driving is a relative thing and is wholly dependent upon so many variable and local circumstances that conviction thereof could not have uniform application throughout the state. In the great majority of cases where a party is charged with reckless driving, his conduct usually involves a violation of one or more local traffic ordinances but in a manner such as to indicate a heedlessness and wanton disregard of persons and property. To say that the city could charge a violator with any one or more infractions of separate regulations in municipal court but could not also group the offenses in the general charge of recklessness when the circumstances indicate an attitude of deliberateness or wantonness, would so narrow the local

police powers as to render them ineffective. Many times the courts find the evidence insufficient to warrant a conviction of reckless driving, but find substantial evidence of violation of single or multiple ordinances, and so dismiss the one but convict on the others. To try offenses arising out of the same driving conduct in two jurisdictions would be unwieldy as well as prejudicial to the person accused. Acquittal in the state court would not necessarily be controlling on the municipal court and subject the offender to two trials on separate, though related, offenses. What compelling reasons are there for such a course of judicial action? We think none.

It is to be noted that although the Merris case did establish the offense of drunken driving to be of statewide concern and governed by state statute, the most significant contribution to law in this state which arose out of that case was a guaranty to all citizens that trials for municipal violations in municipal courts would be in accordance with criminal process. That being the case, no person charged under a municipal ordinance can be prejudiced by leaving as much of local law intact as can be done without violating individual rights or undermining state sovereignty.

Accordingly the rule is discharged.

MR. JUSTICE DOYLE specially concurs.

MR. JUSTICE HALL and MR. JUSTICE FRANTZ dissent.

MR. CHIEF JUSTICE SUTTON does not participate.

MR. JUSTICE DOYLE specially concurring:

I concur without reservation in the opinion of the majority authored by Mr. Justice Day and these concurring remarks are offered only for the purpose of brief personal supplementation.

The City of Colorado Springs is a Twentieth Amendment home rule city and it derives power to legislate

from the Constitution of Colorado. Section 6 of Article XX, supra, provides in part:

"Such charter and the ordinances made pursuant thereto in such matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith."

The scope and extent of these powers is further indicated by one of the concluding paragraphs of Article XX which declares:

"The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except in so far as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters."

Thus, Colorado Springs has full, complete and unlimited legislative power with respect to matters local and municipal and this authority derives not from the General Assembly but from the organic law of Colorado. The distinction between a home rule city and what might be termed a legislative town or city is thus clear. The latter is a creature of the legislature and has only such powers as that body confers upon it. It is with respect to the legislative town or city that the doctrine of preemption familiar in the relationship of the federal government with states comes into play. In the preemption area the intention of the General Assembly to exercise jurisdiction in the entire legislative field is an important consideration. It is obvious, however, that this doctrine is inconsequential, at least as to matters strictly local and municipal, in the determining home rule legislative jurisdiction where the source of the power is the constitution itself. Hence, an expressed legislative intention of the General Assembly with respect to home rule cities can have no legal consequence.

Therefore, the sole issue in the case at bar is whether reckless driving is local and municipal within the boundaries of the home rule city of Colorado Springs, and is

thus subject to the legislative jurisdiction of the city to the exclusion of the jurisdiction of the General Assembly. In my opinion the subject is of this character. This conclusion is based on the fact that the problem differs in each city, and differs from the conditions which exists outside the cities because of traffic congestion inherent in the cities. The complexity of the problem varies in direct relation to the size of the city and the traffic congestion existing within its boundaries. There is, therefore, a valid basis for holding that the matter is local and municipal within the boundaries of home rule cities.

The question is not without difficulties. We have held that the regulation of intersection right-of-way is a matter of local and municipal concern. *Denver v. Henry,* 95 Colo. 582, 38 P. (2d) 895. In *People v. Graham,* 107 Colo. 202, 110 P. (2d) 256, it was said that the regulation of motor vehicle traffic is a matter of both state and local concern and it was further held that the state statute declaring the act of departure from the scene of an accident to be a crime was effective within the City and County of Denver. In *Canon City v. Merris,* 137 Colo. 169, 323 P. (2d) 614, drunken driving was determined to be a statewide problem and subject to the legislative jurisdiction of the General Assembly. Most recently in *Davis v. City and County of Denver,* 140 Colo. 30, 342 P. (2d) 674, we held that the offense of driving a motor vehicle while operator's license is suspended is statewide, and that the definition contained in the statute applies within the boundaries of a home rule city. In each of the cases in which it was determined that the matter was statewide in character there existed a uniform statewide problem unvaried by local circumstances. No similar uniformity is here present. As stated by Mr. Justice Hall herein the standard of recklessness is the same. The circumstances vary. But it is this factor which demands that home rule cities be free to adopt specific definitions adapted to their needs.

In my opinion, it was entirely competent for the city of Colorado Springs to legislate on this subject.

MR. JUSTICE HALL dissenting:

Section 1, Article V of the Constitution of the State of Colorado provides that:

"The legislative power of the state shall be vested in the general assembly * * *."

Thus we see that the people granted to the general assembly plenary powers to legislate, subject to the reservation to the people of the right of initiative and referendum and the inhibition against special legislation imposed by Section 25, Article V.

The people, in adopting Article XX of the Constitution, invested home rule cities with plenary powers to legislate by charter or ordinance on local and municipal matters. To the extent that home rule cities were invested with such power, the legislature was stripped of its power. Decisions of this court have repeatedly held that home rule cities have exclusive jurisdiction over local and municipal matters and that the state has exclusive jurisdiction over matters not local or municipal, but of statewide concern.

There are areas in which all would agree the matter is of statewide concern, such as murder, rape, etc.; other areas in which all would agree the matter is purely local and municipal, such as a storekeeper using the sidewalk in front of his place of business to store or display his merchandise, running a red light at the corner of Sixteenth and Champa, etc. Between these extremes is a vast area in which it may be very difficult to characterize an act as local or statewide.

I conclude, contrary to the majority, that reckless driving is not local or municipal, but statewide, and that adoption of an ordinance dealing with the subject is an invasion of the constitutional powers of the general assembly.

Dealing with reckless driving, the state statute, C.R.S. '53, 1957 Supp., 13-4-31, states:

"Any person who drives any motor vehicle *in such a manner* as to indicate either a wanton or willful disregard for the safety of persons or property is guilty of reckless driving." (Emphasis supplied.)

The offense as defined by the statute consists of: (1) an act — driving (2) in a "manner" as to indicate wantonness, etc.

The real gravamen of the offense is the manner of driving. Without proof of the manner the offense of reckless driving cannot be established. Proof of the manner is just as essential as is proof of driving.

The word "reckless" is an adjective — it does not stand by itself, but is used to denote the quality of conduct in driving an automobile. Not in Denver or Colorado Springs, but anywhere, anytime. There are no local standards for measuring recklessness; the tests are not only of statewide but of universal application.

Recklessness is the same on the ski run as in the swimming pool, in bidding a bridge hand or stroking a mountain lion, in Roggen or Rangoon.

We do not have geographical varieties of recklessness, such as the Denver and Colorado Springs variety, the mountain pass variety, the lake variety, etc. Nor do we have time varieties, such as the evening and morning hours of traffic congestion or the lull preceeding the same.

Recklessness is just that — no more, no less; where and when does not change the quality of the act or the manner of its performance.

In *Denver v. Henry*, 95 Colo. 582, 38 P. (2d) 895, this court, by a four to three vote, held that an ordinance prescribing conduct to be pursued by drivers approaching a street intersection in Denver was valid in that it dealt with a local and municipal matter. The intersection approached in that case existed in Denver only; the offense charged could not have been committed else-

where. One can drive through a certain red light only at the location thereof. On the other hand, one can drive recklessly or carefully any place, and at any or all times.

In *People v. Graham,* 107 Colo. 202, 110 P. (2d) 256, this court held that each of the following acts or omissions were not local or municipal:

1. Leaving the scene of an accident;

2. Failure to give name, address and registration number of automobile;

3. Failure to render aid to persons injured in accident.

In *People v. McNichols,* 91 Colo. 141, 13 P. (2d) 266, we held that the matters of registration of births, deaths, burials, etc., were not matters of local or municipal concern.

In *Ray v. Denver,* 109 Colo. 74, 121 P. (2d) 886, we held that the permissible rate of interest to be charged on small loans was a matter of statewide concern and not subject to regulation by home rule cities.

In *Spears Hospital v. State Board,* 122 Colo. 147, 220 P. (2d) 872, we held that the licensing and regulation of hospitals was not a local or municipal matter.

In *Davis v. Denver,* 140 Colo. 30, 342 P. (2d) 674, we held that driving an automobile by one whose license was suspended was of statewide concern and this while driving on the streets of Denver.

In *City and County of Denver v. Palmer,* 140 Colo. 27, 342 P. (2d) 687, we held that driving of an automobile by one whose license was revoked — in Denver — was a matter of statewide concern.

In *Canon City v. Merris,* 137 Colo. 169, 323 P. (2d) 614, we held that driving a motor vehicle by one under the influence of intoxicating liquor was a matter of statewide concern as distinguished from local and municipal.

Such misconduct consists of (1) driving (2) while in a certain condition. The offense can be consummated anytime and at any place.

I fail to observe any distinction between driving in a *condition,* and driving in a *manner,* such as to warrant holding that one is local and municipal and the other not.

I am of the opinion that the rule should be made absolute.

I am at liberty to state that MR. JUSTICE FRANTZ concurs in this dissent.

MR. JUSTICE FRANTZ dissenting:

MR. JUSTICE HALL has very ably presented, in his dissenting opinion, views I entertain in respect to the problem confronting us. There are, however, additional reasons why I would hold careless driving and reckless driving to be matters of state concern not subject to the jurisdiction of the municipal court of Colorado Springs.

The State of Colorado, through its legislature, has spoken at length and in detail regarding the regulation of traffic in "The Uniform Safety Code of 1935." C.R.S. '53, 13-3 and 13-4. C.R.S. '53, 13-4-6, is a part of "The *Uniform* Safety Code of 1935" and directs:

"The provisions of this article *shall be applicable and uniform throughout this state* and in *all* political subdivisions and *municipalities* therein and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this article *unless expressly authorized herein.* Local authorities may adopt additional traffic regulations which are not in conflict with the provisions of this article." (Emphasis supplied.)

Authorization to vary the statutory provisions in some particulars is granted in the Code to local authorities by Sections 13-4-7 and 13-4-34, neither of which affects reckless driving or careless driving as defined in said Code. The exceptions provided in the latter two sections are as follows:

"13-4-7. Powers of local authorities. — (1) The provisions of this article shall not be deemed to prevent lo-

cal authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power except those highways designated as connecting links in the state highway system; from

(a) Regulating the standing or parking of vehicles;

(b) Regulating traffic by means of police officers or traffic control signals;

(c) Regulating or prohibiting processions or assemblages on the highways;

(d) Designating particular highways as one way highways and requiring that all vehicles thereon be moved in one specific direction;

(e) Regulating the speed of vehicles;

(f) Designating any highways as a through highway and requiring that all vehicles stop before entering or crossing the same or designating any intersection as a stop intersection and requiring all vehicles to stop at one or more entrances to such intersections;

(g) Restricting the use of highways as authorized in sections 13-4-120 to 13-4-131.

(2) No ordinance or regulation enacted under (c), (d), (e) or (f) of subsection (1) of this section shall be effective until signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected as may be most appropriate."

"13-4-34. When localities may alter limits. — (1) Whenever local authorities within their respective jurisdictions determine upon the basis of an engineering and traffic investigation that the prima facie speed permitted under sections 13-4-33 to 13-4-37 at any intersection is greater than is reasonable or safe under the conditions found to exist at such intersection, such local authority shall determine and declare a reasonable and safe prima facie speed limit thereat, which shall be effective when appropriate signs giving notice thereof are erected at such intersection or upon the approaches thereto.

(2) Local authorities in their respective jurisdictions may in their discretion authorize by ordinance higher prima facie speed than those stated in section 13-4-33 upon through highways or upon highways or portions thereof where there are no intersections or between widely spaced intersections provided standard signs are erected giving notice of the authorized speed, but local authorities shall not have the authority to modify or alter the basic rule set forth in subsection (1) of section 13-4-33 or in any event to authorize by ordinance a speed in excess of sixty miles per hour."

In my opinion, the majority has enervated *People v. Graham,* 107 Colo. 202, 110 P. (2d) 256. In that case the court construed the Uniform Safety Code of 1935, and I believe indicated that those powers not excepted in the statute were matters of state concern. In the later case of *Canon City v. Merris,* 137 Colo. 169, 323 P. (2d) 614, the exceptions were to some extent mentioned as proper matters for municipal regulation.

Paraphrasing certain of the language in *People v. Graham,* supra, I would say: "The only question with which we are here concerned is whether the derelictions charged in the complaint are violations of regulations of motor vehicle traffic of a local and municipal nature over which a home rule city has exclusive jurisdiction. *If not, the general laws of the state apply.*"

There being no exception in favor of local authorities pertaining to reckless driving and careless driving, it seems clear that the mandate that the statutes "shall be applicable and uniform throughout this state and in all * * * municipalities therein" effectually bars proceedings against Retallick based upon alleged violations of ordinances. The statutory provisions defining reckless driving and careless driving and providing for penalties are matters of state competence by express mandate of the statute and under the authority of *People v. Graham,* supra, and are part of the general law of the state.

That the state has adequately and preemptively cov-

ered these two phases of traffic law appears from the following quoted portions of statutory law, omitting penalty provisions:

"Any person who drives any motor vehicle in such a manner as to indicate either a wanton or willful disregard for the safety of persons or property is guilty of reckless driving." C.R.S. '53, 13-4-31 (1). 1957 Cum. Supp.

"Any person who drives any motor vehicle in a careless and imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving." C.R.S. '53, 13-4-32 (1). 1957 Cum. Supp.

It would appear that the legislature has enacted a very complete code regulating traffic in the state of Colorado, and with definitude has delineated the limited area in which local authorities may act because certain phases of traffic may present local and municipal problems. Both under the statutes and under the ordinances, reckless driving and careless driving have quite similar meanings.

When the state exercises the police power in an area proper to its exertion, every local authority, including a home rule city, must yield to the dominant authority and recognize that in such area the state occupies it to the exclusion of the local authority. *Denver v. Tihen,* 77 Colo. 212, 235 Pac. 777; *People v. McNichols,* 91 Colo. 141, 13 P. (2d) 266. This right to exercise the police power abides in the state, inviolable and inalienable. Idem.

"We must presume that the General Assembly, with full knowledge of the sentiment of all the people, intended to, as it did, declare it to be the public policy of the state that cemeteries not organized or maintained for profit, shall not be liable to assessments. The legislature of a state has sole power to say what the public policy of the state shall be. * * * Our General Assembly

by statute, in the exercise of its unquestioned power, is the only body competent to say what the public policy of the state shall be, and in it resides the sovereign police power of the state, independent of constitutional or common law provisions. There was, as already stated, in existence at the time of the adoption of article XX, a constitutional exemption from general taxation of cemeteries not for profit, and a statutory exemption from local assessments. That public policy of the state applies to every portion of the state. It is just as applicable to the home rule cities now as it was and is to municipalities organized under general statutes.

* * *

" * * * In making such declaration the General Assembly was exercising its sole right to declare for the entire state what the public policy shall be with reference to the exemption of cemeteries not for profit from all kinds of public burdens and charges. This right of the state to declare its own public policy is an exercise of its inherent, indefinable police power. Among the subjects to which this police power extends are the peace and good order of society, the general welfare, the security and quiet of the people. * * * We do not believe the people in adopting article XX, and the amendments thereto, ever intended to surrender or relinquish any portion of its police power to declare the public policy of the state; but, if it had so intended, it would have been an abortive effort. In no event should the courts hold that the legislature of a state is not supreme throughout its entire territory in the exercise of its sovereign police power, subject, of course, to constitutional restrictions, or that its right and authority to declare its public policy for the entire state has been divested, unless the sovereign people in explicit terms and by constitutional methods have otherwise declared.

"After the adoption of article XX this Court has decided that the state was not precluded thereby from unrestricted regulation of the liquor traffic. *Walker v.*

*People,* 55 Colo. 402, 135 Pac. 794. In *Keefe v. People,* 37 Colo. 317, we said, at page 325, 87 Pac. 791, that the state statute prohibiting any officer of a municipality from permitting any working man employed by it to work more than eight hours a day was as applicable to home rule, as to other classes of, municipalities. The court there held, and the ruling is peculiarly pertinent here, that the state, in enacting this statute declared what the public policy of the state shall be with respect to hours of labor, and that it still has the supreme power to enact general laws declaring what its public policy shall be. It was further held that while the matter of building and making a public sewer was in a sense a local matter, just as, in one sense, an assessment is, yet, in the full sense, it is of state and governmental import, and the power of the municipality to legislate with respect thereto is subordinate and subject to the police power of the state by which it declared what its public policy should be. This doctrine was approved in *Glendinning v. Denver,* 50 Colo. 240, 114 Pac. 652, where there was a conflict between a state statute and a municipal ordinance of the city regulating the sale of oleomargarine. In one sense such regulation is local, still legislation with respect to that matter involved the public health and the state law is supreme. The exemption here affects and directly concerns the public welfare, the peace and good order of society, the quiet and security of the people in preserving from profanation the burial places of their dead. In *Mauff v. People,* 52 Colo. 562, 123 Pac. 101, this court reiterated what it had said a number of times before in the cases just cited, and in other cases which might be referred to, that the purpose of the Home Rule Amendment was to give to the people of home rule cities exclusive control in matters of 'local concern only,' and that where the Constitution and general laws are not set aside by express words or necessary implication, they are as much in force in home rule cities as in other portions of the state. That

if by the Home Rule Amendment it had been undertaken to free the home rule cities from the state Constitution, from statute law, and from the authority of the General Assembly respecting matters other than those of purely local concern, that amendment could not have been upheld. The same doctrine has been declared in *People, ex rel. v. Cassiday,* 50 Colo. 503, 117 Pac. 357. In the Mauff Case the specific ruling was that the people of the home rule cities cannot legislate in a matter which is one of general interest and that even a municipal election was of such general and public interest that the city could not legislate upon it. Applying the principle laid down in these decisions, we say that while the matter of the taxation and assessment of cemeteries in this state, not organized or maintained for private or corporate profit, is, in a sense, local to every city and county in the state, yet in the larger and fuller sense, considering the general sentiment of all civilized people that ground set apart for the burial place of the dead is sacred, it is a matter of statewide importance and of governmental import, and not merely of local or municipal concern. Certainly in the absence of a specific contrary provision on the subject, this court should not hold that the people of the state did or would consent that cemeteries in any part of the state should be subject to taxation or assessment." *Denver v. Tihen,* supra.

Cases subsequent to the Tihen case adhering to the same doctrine are: *City and County of Denver v. Bossie,* 83 Colo. 329, 266 Pac. 214; *People v. Denver,* 90 Colo. 598, 10 P. (2d) 1106; *McCormick v. Montrose,* 105 Colo. 493, 99 P. (2d) 969; *People ex rel. v. Newton,* 106 Colo. 61; 101 P. (2d) 21; *Ray v. Denver,* 109 Colo. 74, 121 P. (2d) 886; *Denver v. Sweet,* 138 Colo. 41, 329 (2d) 441.

In the Bossie case it was held that Denver was subject to a statute requiring the use of materials produced in Colorado in the construction of a court house, and laid down the guide by which to determine when a matter is of statewide concern in this language: "That the build-

ing and maintenance of a court house is of general public interest is manifest from the necessities of justice. That a court house and its usual incidents be maintained in Denver county is of nearly as great importance to the state at large as to Denver, and so of the court house of every other county."

It is to be noted that under this test the determinative factor is whether the matter involved is of general public interest; the fact that it may have a greater significance to the local authority does not in that event derogate from its character as being of state-wide concern.

*People v. Denver,* supra, involved the state gasoline tax, and it was held that it was applicable to gasoline used in vehicles propelled on streets and highways in all counties and municipalities in the state, including home rule cities.

Slum clearance and proper housing facilities were held to be of public concern and a proper subject for the exercise of the police power under state sovereignty in the case of *People v. Newton, supra.*

In *Ray v. Denver,* supra, this court decided that the state had preempted small loans regulations by legislating upon it. And in *Denver v. Sweet,* supra, the imposition of income taxes was said to be within the exclusive power of the General Assembly, voiding thereby a city income tax.

It is the import of these cases that, even though a municipality has a concern in a matter, even an important concern, still it is a concern of the state where the matter is of general public interest, and in such event a statute involving policy supersedes a municipal ordinance on the same subject. Only where the matter enacted is *purely* of local and municipal concern is the home rule supreme. We upset firmly entrenched law if we rule otherwise; doctrine enunciated in the Tihen case, and in cases before and after it, is scuttled, as I see it, by the majority views in this case.

Here the state has attempted to effect a very desirable

end: uniformity in the operation of vehicles over the streets and highways in this state in all phases of traffic movement in which there is a general public interest. It has sought to make such laws applicable to every part of the state, including *every* municipality. Obviously, the declared public policy of the state in so doing has as its objective doing away with confusing and conflicting laws regarding the traffic of the state. Citizens of this state and of other states would thus not be confronted with a mosaic of traffic laws which add to the hazards of driving and present pitfalls for the unknowing driver.

Actually, the Uniform Safety Code declares the policy of the state on matters of interest to the citizens of the state as a whole, and is a police measure because of its attempt to bring clarity and uniformity out of chaos resulting from diverse and conflicting traffic regulations, thereby reducing the hazards of the road.

This power is in the state and remains with the state until delegated. There is no invasion of the power of home rule cities in this matter, because as to those traffic problems which are essentially of a local and municipal nature, exceptions are made in the statute.

Careless driving depends upon circumstances. Careless driving is nothing more than common law negligence applied to the operation of a vehicle. It has a universal meaning and it can have no different meaning, whether the act is performed in or outside a city; in each instance, circumstances determine the character of the conduct. Reckless driving is in the same category, except that the transgression denotes a greater degree of fault.

For these reasons I am in complete disagreement with the majority.